Docket No. 98014–Agenda 7–January 2005.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TRAVIS SMITH, Appellant.

Opinion filed March 24, 2005.

JUSTICE GARMAN delivered the opinion of the court:

Defendant, Travis Smith, was charged by indictment with aggravated unlawful use of a weapon (720 ILCS 5/24–1.6(a)(1), (a)(3)(C) (West 2000)) after a police officer seized a handgun from his sleeve during a pat-down search. The circuit court of Du Page County allowed defendant’s motion to quash his arrest and suppress the handgun from evidence. The State appealed, and the appellate court reversed and remanded. 346 Ill. App. 3d 146. At issue before this court is the validity of defendant’s consent to the pat-down search. We hold that defendant’s consent was voluntary, and that it was not the result of an unlawful seizure. Accordingly, we affirm the judgment of the appellate court.

BACKGROUND

The following evidence was presented at the hearing on defendant’s motion to quash arrest and suppress evidence. On February 24, 2002, at approximately 3:30 a.m., Naperville police officer Kevin Driscoll stopped a car with four occupants for speeding and failing to signal lane changes. The stop took place roughly one mile west of the Route 59 exit on Interstate 88 (I-88). In that area, I-88 is a six-lane tollway with a 55-mile-per-hour speed limit. Access to it is restricted by a chainlink fence, and there are no businesses in the immediate vicinity.

Officer Driscoll conducted field sobriety tests on the driver of the vehicle, Demond Taylor. At this time, Naperville police officer Bruce Schnizlein, who had been called for backup, was also present. He observed Officer Driscoll conduct the field sobriety tests. Officer Driscoll placed Taylor under arrest for driving under the influence of alcohol (DUI). He then asked the three passengers–defendant and brothers Willie and Edmond Reese–to exit the car and identify themselves. Afterward, with Officer Schnizlein’s help, Officer Driscoll searched the car.

Upon completing the search, Officer Driscoll engaged in a conversation with defendant and the Reese brothers in which he attempted to determine if one of them could drive the car. One of the Reese brothers admitted his driver’s license was suspended. The other Reese brother and defendant did not appear sober to Officer Driscoll, and he administered a preliminary breath test to each. According to Officer Driscoll, the breath test results indicated neither individual was fit to drive. Officer Driscoll informed the Reese brothers and defendant that, since none of them could drive the car, the car was going to be towed. He testified that the men were told they could arrange for someone to pick them up from the roadside, and that one of them had a cellular telephone in his possession. He further testified that one of the Reese brothers informed him the men were unable to reach anyone to come pick them up. Officer Driscoll also explained that he offered the men a courtesy ride back to the Naperville police station. He could not recall talking specifically to defendant about the possibility of accepting the courtesy ride.

During his testimony, Officer Driscoll related that it is his belief that pedestrians are prohibited from walking alongside I-88, and that the shoulder area is “for emergency stopping only.” In response to a question about emergency use of the shoulder, he testified that he “couldn’t possibly” have authorized the intoxicated men to walk along the tollway. While Officer Driscoll did not offer the men the option of walking to the Route 59 exit, he did not testify that he explicitly prohibited the men from departing on foot, or that any of them requested his permission to do so.

After defendant and the Reese brothers spoke with Officer Driscoll, they reentered the car, and Officer Driscoll had a brief conversation with Officer Schnizlein. Officer Schnizlein testified that, based on this conversation, it was his understanding that Officer Driscoll had offered defendant and the Reese brothers the alternatives of riding back to the police station in a police car, where they could then arrange for someone to pick them up, or calling someone to pick them up directly from the roadside. It was also Officer Schnizlein’s understanding that the three men were unable to arrange for a ride directly from the roadside, and that they wanted to go to the police station. Officer Schnizlein initially stated he could not recall whether any of the men had a cellular phone. When allowed to refresh his memory using a police property report, he testified no cellular phone was found on defendant’s person, but maintained he could not recall whether either of the Reese brothers had a phone.

Once Officer Driscoll had described the situation to Officer Schnizlein, Officer Driscoll turned responsibility for the three men over to Officer Schnizlein and left to transport Taylor to the Naperville police station. Shortly after Officer Driscoll departed, Officer Carlson of the Naperville police department arrived in his squad car to help Officer Schnizlein transport the men off of I-88. Officer Schnizlein and Officer Carlson briefly conferred with one another, and Officer Schnizlein instructed defendant and the Reese brothers to exit the car. At that point, Officer Schnizlein explained to the men that they were going to be taken to the Naperville police station. He asked them if they were carrying any weapons and advised them that the Naperville police department’s policy is to search individuals for weapons prior to transporting them in a police vehicle. Defendant said he did not have any weapons, and Officer Schnizlein asked if he could perform a pat-down search on defendant. Defendant responded by facing Officer Schnizlein’s squad car and placing his hands on the trunk. Officer Schnizlein then patted down the exterior of defendant’s clothing and located a bulge in defendant’s left sleeve. When Officer Schnizlein asked defendant what the bulge was, defendant stated it was a handgun. Officer Schnizlein recovered the handgun from defendant’s sleeve and placed defendant under arrest. According to Officer Schnizlein, prior to the time defendant was searched, he was free to leave the area, but never tried to depart.

At approximately the same time Officer Schnizlein was conducting the pat-down search, the tow truck Officer Driscoll had called arrived. Officer Driscoll did not offer the men the option of riding in the tow truck. He testified, however, that if defendant had asked to wait for the tow truck and travel with the tow truck driver, “[i]t probably wouldn’t have been objectionable *** at all.” He further testified that the reason he did not ask defendant if defendant wanted to ride in the tow truck was that it was not his place to do so, as the decision would be up to the tow truck driver. Officer Schnizlein, like Officer Driscoll, did not offer the men the option of riding in the tow truck.

Officer Schnizlein estimated that the time he spent on the scene prior to conducting the search was 20 to 30 minutes. Both Officer Driscoll and Officer Schnizlein testified that, throughout the course of their encounter with defendant, defendant was cooperative and polite. Ultimately, Officer Schnizlein transported defendant from the scene, and Officer Carlson transported the Reese brothers, both of whom had consented to pat-down searches.

At the conclusion of the argument on defendant’s motion, the circuit court continued the hearing to allow the State to produce a statute, rule, or regulation prohibiting pedestrians from walking on highways. On the continued hearing date, the circuit court issued a memorandum opinion allowing defendant’s motion to quash arrest and suppress evidence. It also rejected the State’s argument that it was necessary to transport defendant in the squad car and reasonable to search him before doing so because section 11–1010 of the Illinois Vehicle Code prohibited defendant from departing the scene of his encounter with the Naperville police on foot. Section 11–1010 prohibits any pedestrian under the influence of alcohol who is a “hazard” from being “upon a highway except on a sidewalk.” 625 ILCS 5/11–1010 (West 2000). The circuit court reasoned that, despite evidence defendant failed a preliminary breath test, there was no evidence he was so intoxicated as to be a “hazard” within the meaning of section 11–1010. The State orally moved to reopen proof with respect to defendant’s intoxication, but the circuit court denied this motion. The State also indicated the possibility that it would move to reopen proof on the general permissibility of pedestrian usage of I-88, but did not formally do so.

 In the circuit court’s memorandum opinion, it found defendant consented to the search of his person, as evinced by the facts that the search was not preceded by any accusatory questions by the officers, there was no indication of any hostility between defendant and the officers, there was no indication of any show of authority by the officers, and the request to search was made on the basis of a police policy dictating that no civilian could ride in a police vehicle without first being searched. The court also found, however, that the actions of the police that occurred prior to defendant’s consent affected its validity. Specifically, the court noted that Officer Driscoll’s testimony that he was concerned about giving the men permission to walk to the Route 59 exit because of the preliminary breath test results was “somewhat contradicted” by his testimony that he believed it was illegal for individuals to walk on the tollway. In addition, the court reasoned that even though the State argued the officers were involved in a community caretaking function when they dealt with defendant, there was no evidence to support the conclusion that defendant was incapable of walking one mile to the Route 59 exit as a result of intoxication. The court also determined that an individual is not prohibited by law from walking alongside a highway, as long as the individual does so in accordance with the provisions governing pedestrian usage of highways set forth in section 11–1007 of the Vehicle Code (625 ILCS 5/11–1007 (West 2000)). According to the court, if defendant had been given the option of walking to the Route 59 exit, declined that option, and indicated a desire to be transported from the roadside in a police vehicle, then the search in this case would have been proper. Without being told that walking to the exit was an option available to him, however, defendant was left only with the option of police transport, which required that he consent to the search. Accordingly, the circuit court concluded that the circumstances surrounding defendant’s consent rendered the search improper.

After the circuit court allowed defendant’s motion to quash arrest and suppress evidence, the State filed a written motion to reopen proof on the permissibility of pedestrian usage of I-88. The circuit court denied this motion, and the State appealed.

On appeal, the appellate court, with one justice dissenting, reversed the judgment of the circuit court and remanded the cause. 346 Ill. App. 3d 146. The appellate court majority first concluded defendant’s nonverbal manifestation of consent was voluntary. 346 Ill. App. 3d at 153. Next, in determining whether the consent was invalidated by the nature of the encounter that occurred prior to the pat-down search, the majority held that the encounter between defendant and Officer Schnizlein involved community caretaking and did not constitute an illegal seizure. 346 Ill. App. 3d at 155-56. It found that a reasonable person in defendant’s circumstances would have believed he was free to leave the scene of the traffic stop. 346 Ill. App. 3d at 156. Defendant and the Reese brothers were told they were free either to call someone on a cellular telephone to arrange to be picked up, or to accept a courtesy ride to the police station to arrange for transportation from that location. 346 Ill. App. 3d at 156. The inability of defendant and the Reese brothers to drive the car away from the scene, their lack of success in arranging to have someone pick them up from the roadside, and their failure to request a ride in the tow truck were independent of the conduct of the police. 346 Ill. App. 3d at 156-57. As to the possibility the men could have walked away from the scene, the majority noted there is no indication in the record that the men wanted, or attempted, to depart on foot, or that the police expressly prohibited them from doing so. 346 Ill. App. 3d at 157. Furthermore, the fact the men were not offered the option of departing on foot did not invalidate defendant’s consent to the search, because it would have been illegal for defendant to walk alongside the tollway. 346 Ill. App. 3d at 158-59. According to the majority, the results of the preliminary breath test administered to defendant, combined with the observations of Officer Driscoll, indicated defendant was under the influence of alcohol to such a degree he would have been a “hazard” as a pedestrian, in violation of section 11–1010 of the Vehicle Code (625 ILCS 5/11–1010 (West 2000)). 346 Ill. App. 3d at 158-59.

In addition to determining a reasonable person in defendant’s circumstances would have felt free to leave the scene of the traffic stop, the appellate court majority set forth three alternative justifications for reversing the decision of the circuit court. First, the majority concluded the police were justified in detaining defendant based on a reasonable suspicion criminal activity was about to occur–specifically, that defendant would violate section 11–1010 of the Vehicle Code by walking alongside the tollway if the police left the scene. 346 Ill. App. 3d at 159. Next, the majority reasoned that, regardless of whether the police had a reasonable suspicion defendant was about to commit an offense, an emergency exception to the fourth amendment warranted defendant’s seizure, given the nature of defendant’s “emergency situation.” 346 Ill. App. 3d at 160. The officers’ actions, explained the majority, were intended to help defendant avoid serious injury in departing from the roadside, not as a pretext for searching defendant and his companions. 346 Ill. App. 3d at 161-62. Finally, the majority held that the police officers had a duty to remove defendant from the roadside, and that the need to transport a citizen in a police vehicle creates an exigent circumstance justifying a minimally intrusive pat down of the citizen’s clothing. 346 Ill. App. 3d at 164.

We granted defendant leave to appeal pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315). The issues before us are (1) whether defendant voluntarily consented to the pat-down search, and if so, (2) whether defendant’s consent was invalidated by the nature of the police-citizen encounter that preceded it; (3) whether the police had a duty to offer transportation to defendant, and if so, (4) whether the duty created an exigent circumstance that allowed the police to search defendant for weapons without probable cause or reasonable suspicion. Because we hold that defendant’s consent was voluntary, and that defendant was not “seized” within the meaning of the fourth amendment of the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, §6) prior to giving that consent, we need not address the third and fourth issues presented.

ANALYSIS

This case requires us to review a circuit court’s ruling on a motion to suppress. Such review presents both questions of law and fact. 
People v. Pitman
, 211 Ill. 2d 502, 512 (2004). The circuit court’s findings of fact will be upheld unless they are against the manifest weight of the evidence. 
Pitman
, 211 Ill. 2d at 512. We review the ultimate question of whether the evidence should be suppressed 
de novo
. 
Pitman
, 211 Ill. 2d at 512.

As a preliminary matter, we note that the initial traffic stop of the car in which defendant was riding was permissible based on Officer Driscoll’s observations of traffic violations. See 
People v. Gonzalez
, 184 Ill. 2d 402, 413 (1998). The following discussion pertains not to the initial traffic stop, but rather to the actions following the lawful conclusion of that stop.

I. Voluntariness of Consent to Search

Defendant argues his consent to the pat-down search that Officer Schnizlein conducted was involuntary, because he merely acquiesced to the apparent authority of the police in allowing Officer Schnizlein to search him for weapons prior to entering Officer Schnizlein’s vehicle.
(footnote: 1) Accordingly, defendant urges this court to reverse the rulings of the circuit court and the appellate court that his consent to the pat-down search was voluntary. In response, the State contends that Officer Driscoll and Officer Schnizlein controlled neither the circumstance of defendant being stranded on the tollway nor defendant’s choice of how to exit the tollway. Defendant’s consent to the pat-down search, argues the State, was an exercise of free will, not a result of force or coercion.

As the appellate court observed, the circuit court did not specifically find that defendant’s consent was voluntary. The circuit court’s memorandum opinion simply stated “that the defendant by his action did in fact consent to the search by the officer.” The appellate court, however, interpreted the circuit court’s opinion as finding that defendant’s consent was voluntary. We agree with the appellate court on this point. In 
People v. Anthony
, this court held that the State failed to establish that the defendant voluntarily consented to the search of his person. 
Anthony
, 198 Ill. 2d at 203-04. The circuit court distinguished 
Anthony
 in its memorandum opinion, implying that, in this case, it reached a conclusion contrary to 
Anthony
–namely, that defendant voluntarily consented to the search. Furthermore, if the circuit court had not determined that defendant’s consent was voluntary, it would not have been necessary for it to consider whether the actions of the police placed defendant in the position of having to consent to the search. The circuit court did, however, consider this issue. For these reasons, we interpret the circuit court’s memorandum opinion as finding that defendant’s consent to the pat-down search was voluntary, as did the appellate court.

We turn now to the merits of defendant’s argument that his consent to the pat-down search was involuntary. Both the fourth amendment of the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, §6) protect individuals from unreasonable searches and seizures. In interpreting the search and seizure provision of the Illinois Constitution, this court looks to the United States Supreme Court’s fourth amendment jurisprudence. 
Anthony
, 198 Ill. 2d at 201. In general, reasonableness in the context of a fourth amendment search and seizure requires a warrant supported by probable cause. 
People v. Love
, 199 Ill. 2d 269, 275 (2002), citing 
Katz v. United States
, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967). It is well settled, however, that an individual may voluntarily consent to a search, thereby eliminating the need for probable cause and a warrant. 
People v. Ledesma
, 206 Ill. 2d 571, 592 (2003), 
overruled on other grounds
, 
Pitman
, 211 Ill. 2d at 513. For consent to be voluntary, it “must be received, not extracted ‘by explicit or implicit means, by implied threat or covert force.’ ” 
Anthony
, 198 Ill. 2d at 202, quoting 
Schneckloth v. Bustamonte
, 412 U.S. 218, 228, 36 L. Ed.2d 854, 863, 93 S. Ct. 2041, 2048 (1973). Whether consent to a search was voluntary is a question of fact determined from the totality of the circumstances surrounding the consent. 
Ledesma
, 206 Ill. 2d at 592-93, citing 
Ohio v. Robinette
, 519 U.S. 33, 40, 136 L. Ed. 2d 347, 355, 117 S. Ct. 417, 421 (1996). Here, we review the circuit court’s finding of fact that defendant’s consent to the pat-down search was voluntary to determine if it is against the manifest weight of the evidence. 
Pitman
, 211 Ill. 2d at 512.

As the circuit court observed in its memorandum opinion, in this case the pat-down search conducted by Officer Schnizlein was not preceded by any accusatory police questioning. Nor is there any indication that hostility existed between defendant and the officers, or that the officers exhibited their authority in an intimidating fashion. Officer Schnizlein merely requested permission to search defendant prior to allowing defendant to enter his squad car as a matter of standard Naperville police department procedure. We see nothing in the record to contradict these findings. Considering the totality of undisputed facts in this case, we conclude that the circuit court’s ruling that defendant’s consent was voluntary was not against the manifest weight of the evidence.

We note that the circuit court and the appellate court properly distinguished this case from 
People v. Anthony
, where this court held that the State failed to establish that the defendant’s consent was voluntary. 
Anthony
, 198 Ill. 2d at 203-04. In 
Anthony
, the searching officer first contacted the defendant from 50 feet away by calling to him down an alley. 
Anthony
, 198 Ill. 2d at 203. The officer then proceeded to ask the defendant a series of increasingly accusatory questions, in response to which defendant “ ‘assumed the position’ ” of an arrestee by spreading his legs and placing his hands on top of his head. 
Anthony
, 198 Ill. 2d at 203. Here, by contrast, defendant’s consent to the pat-down search came in the context of Officer Schnizlein offering defendant a ride off the side of the roadway in his squad car. Defendant was informed prior to being asked to consent to the search that the Naperville police department’s policy is to search individuals for weapons before transporting them in a police vehicle. Defendant thus was not confronted by the same kind of spontaneous, pointed, and successive questioning as the defendant in 
Anthony
.

II. Legality of Encounter Preceding Consent to Search

Defendant alternatively argues that his consent was invalidated by the nature of the encounter that preceded it. He contends he was unlawfully seized prior to consenting to the pat-down search, and that the unlawful seizure tainted his consent. Specifically, he asserts that a reasonable person in his position would have believed he was not free to leave the encounter, and that the seizure to which he was subjected was not based on a reasonable suspicion criminal conduct was about to occur. Defendant also disputes that an emergency exception to the fourth amendment justified his seizure. In response, the State argues that the Naperville police officers’ encounter with defendant merely involved community caretaking, and defendant was not seized. Alternatively, the State argues defendant’s seizure was justified on the basis of a reasonable suspicion defendant was about to violate Illinois’ prohibition against the use of highways by intoxicated pedestrians, and on the ground that defendant’s emergency situation fell within an emergency exception to the fourth amendment. We agree with the State that defendant was not seized. Consequently, we need not address whether reasonable suspicion existed to justify detaining defendant, or whether defendant’s situation fell within an emergency exception to the fourth amendment.

This court has recognized that, theoretically, police-citizen encounters can be divided into three tiers. 
People v. Murray
, 137 Ill. 2d 382, 387 (1990). One tier involves the arrest of a citizen, which must be supported by probable cause; the second involves the so-called “
Terry
 stop,” which must be supported by a reasonable suspicion of criminal activity (see 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)); and the third involves what is sometimes referred to as “community caretaking,” or alternatively, “the community caretaking function,” which need not be supported by probable cause or reasonable suspicion. See 
Murray
, 137 Ill. 2d at 387-88. In essence, “ ‘[c]ommunity caretaking’ is a label used to describe consensual police-citizen encounters that typically involve the safety of the public.” 
People v. Gonzalez
, 204 Ill. 2d 220, 224 (2003) (declining to apply the label where no facts in record warranted its use); see also 
People v. Gonzalez
, 324 Ill. App. 3d 15, 22 (2001) (collecting cases), 
rev’d & remanded
, 204 Ill. 2d 220 (2003). Encounters falling within this tier do not involve coercion or detention, and therefore do not rise to the level of a fourth amendment seizure. 
Murray
, 137 Ill. 2d at 387.

A person is seized “ ‘when, by means of physical force or a show of authority,’ that person’s ‘freedom of movement is restrained.’ ” 
People v. Brownlee
, 186 Ill. 2d 501, 517 (1999), quoting 
United States v. Mendenhall
, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). In determining if a seizure has occurred, a court considers whether, “ ‘in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.’ ” 
Brownlee
, 186 Ill. 2d at 517, quoting 
Mendenhall
, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877; accord 
People v. Gherna
, 203 Ill. 2d 165, 178 (2003) (describing relevant inquiry as whether “the conduct of the police would lead a reasonable innocent person under identical circumstances to believe that he or she was not ‘free to decline the officers’ requests or otherwise terminate the encounter’ ”), quoting 
Florida v. Bostick
, 501 U.S. 429, 436, 115 L. Ed. 2d 389, 400, 111 S. Ct. 2382, 2387 (1991)); see also 
California v. Hodari D
., 499 U.S. 621, 628, 113 L. Ed. 2d 690, 698, 111 S. Ct. 1547, 1552 (1991) (describing relevant inquiry as whether individual “was not free to disregard the police and go about his business”). Where an illegal seizure occurs, subsequent consent to a search may be found to have been tainted by the illegality. 
Gherna
, 203 Ill. 2d at 187.

A seizure does not occur simply because a law enforcement officer approaches and questions a person if that person is willing to listen. 
United States v. Drayton
, 536 U.S. 194, 200, 153 L. Ed. 2d 242, 251, 122 S. Ct. 2105, 2110 (2002). 
Mendenhall 
lists four examples of circumstances that may be indicative of a seizure: (1) the threatening presence of several police officers, (2) the display of a weapon by an officer, (3) some physical touching of the individual involved in the encounter, and (4) the use of language or tone of voice indicating that compliance with the officer’s request might be compelled. 
Mendenhall
, 446 U.S. at 554-55, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. Absent some such evidence, “otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.” 
Mendenhall
, 446 U.S. at 555, 64 L. Ed. 2d at 509-10, 100 S. Ct. at 1877.

Applying the above principles to the case before us, we conclude that defendant was not seized. At the outset, we note that none of the four circumstances enumerated in 
Mendenhall 
are present in this case. While three police officers–Officer Driscoll, Officer Schnizlein, and Officer Carlson–were involved in the encounter with defendant, no more than two of the officers were present at any given time, and there is no indication their presence was threatening. Furthermore, there is no indication that any weapons were displayed during the course of the encounter, that defendant was physically touched by any of the officers prior to consenting to the pat-down search, or that any of the officers used forceful language or tone of voice in addressing defendant.

It is clear, based on the totality of the facts presented, that the Naperville police officers involved in this case were simply attempting to ensure the safe transport of defendant and his companions from the side of the tollway. When Officer Driscoll placed Taylor under arrest for DUI and the initial traffic stop ended, defendant and the Reese brothers were left on the roadside. They were presented with the options of either (1) driving away in the stopped vehicle, (2) arranging for someone to pick them up, or (3) riding back to the police station in a police vehicle. Defendant’s inability to take advantage of the first and second options arose independently of any police conduct. As to the first, defendant and one of the Reese brothers were too intoxicated to drive, and the other Reese brother’s driver’s license was suspended. As to the second, the men’s attempt to arrange to be picked up was unsuccessful. While the circuit court did not making any specific findings of fact regarding the men’s attempt to obtain transportation, it did not, in any way, indicate that Officer Driscoll’s testimony on this point lacked credibility. From this, we infer that the men did in fact have access to a cellular phone, which they used in attempting to arrange a ride, albeit unsuccessfully.

Defendant and his companions were not explicitly presented with the options of (1) walking to the Route 59 exit of the tollway or (2) riding in the tow truck contacted by Officer Driscoll. Nor, however, were they expressly prohibited from departing on foot or riding in the tow truck. In arguing that a reasonable person in defendant’s position would have believed he was not free to leave the scene of the encounter, defendant asserts Officer Driscoll would not have allowed him to depart had he attempted to walk to the Route 59 exit. Defendant emphasizes Officer Driscoll’s testimony that he could not have authorized the intoxicated men to walk along the tollway, and that, in general, pedestrians are prohibited from walking along I-88. This emphasis is misplaced. Police officers’ objective conduct is relevant to determining whether a seizure has occurred, not their subjective intentions. 
Michigan v. Chesternut
, 486 U.S. 567, 575 n.7, 100 L. Ed. 2d 565, 573 n.7, 108 S. Ct. 1975, 1980 n.7 (1988) (“the subjective intent of the officers is relevant to an assessment of the Fourth Amendment implications of police conduct only to the extent that that intent has been conveyed to the person confronted”), citing 
Mendenhall
, 446 U.S. at 554 n.6, 64 L. Ed. 2d at 509 n.6, 100 S. Ct. at 1877 n.6; see also 
People v. Wicks
, 236 Ill. App. 3d 97, 104 (1992) (officer’s subjective view that suspect under arrest not relevant unless view conveyed to suspect); 4 W. LaFave, Search & Seizure §9.4(a), at 413 (4th ed. 2004) (uncommunicated intention of officer not determinative in analyzing whether seizure occurred). Officer Driscoll’s testimony merely elucidates a subjective intention that was not communicated to defendant through Officer Driscoll’s objective conduct. It is thus irrelevant to determining whether defendant was seized. Relatedly, we need not determine whether the circuit court’s finding on the continued hearing date that there was no evidence defendant was so intoxicated as to be a “hazard” within the meaning of section 11–1010 of the Vehicle Code was, as the appellate court determined, against the manifest weight of the evidence. There is no indication that Officer Driscoll’s assessment of the effect defendant’s intoxication had on the legality of defendant’s use of the tollway was ever conveyed to defendant through Officer Driscoll’s objective conduct. In view of these circumstances, we cannot say that a reasonable person in defendant’s position would have believed he was not free to leave the scene of the encounter. Defendant was not unlawfully seized.

CONCLUSION

We hold that defendant voluntarily consented to the pat-down search performed by Officer Schnizlein, and that the encounter that preceded defendant’s consent was not a seizure. Therefore, defendant’s consent to the search was valid. Accordingly, we affirm the judgment of the appellate court, which remanded the cause for further proceedings.

Appellate court judgment affirmed.

FOOTNOTES
1:     
1
As a matter of clarification, we note that we understand defendant to argue only that the consent given in this case was involuntary, not that no consent was given. 
Cf. People v. Parker
, 312 Ill. App. 3d 607, 616 (2000) (determining whether consent is constitutionally valid requires inquiring both whether consent was given and whether consent was voluntary), quoting 
People v. Henderson
, 142 Ill. 2d 258, 299 (1990) (“[W]hen a court is deciding whether consent was given (not whether that consent was voluntary), the circumstances must have been such that the police could have reasonably believed they had been given consent to enter”). Nowhere in the briefs submitted to this court does defendant suggest that facing the police car and placing his hands on its trunk in response to Officer Schnizlein’s request to perform a pat-down search was a gesture insufficient to manifest his consent. 
Cf. People v. Anthony
, 198 Ill. 2d 194, 202 (2001) (defendant may convey consent to search by nonverbal conduct). Therefore, we confine our analysis to the voluntariness of defendant’s consent.