FIFTH DIVISION
May 5, 2006

No. 1-05-0811

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| DOLORES JAMES, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Catherine M. Haberkorn, |
| | ) | Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a stipulated bench trial, defendant, Dolores James, was convicted of possession of a controlled substance and sentenced to two years of TASC probation. On appeal, defendant contends that the trial court erred in denying her motion to quash her arrest and suppress evidence. She also contends that her constitutional right of confrontation was violated where the record is devoid of evidence showing that she knowingly and intelligently waived that right before her trial counsel entered evidence through stipulations, and that the compulsory extraction and inclusion of her DNA in state and national databases, pursuant to section 5-4-3 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4-3 (West 2002)), violates her fourth amendment right to be free from unreasonable searches and seizures.

Prior to trial, defendant filed a motion to quash her arrest and suppress evidence, contending that she was improperly seized by the actions of the police officers at the time she was asked whether she had any contraband. At the suppression hearing, Chicago police officer Randall Baker testified that at 10:30 p.m. on September 26, 2003, he and his partner, Officer Herrera, were stopped at a traffic light when he noticed defendant approaching customers entering a liquor store at the corner of 106th Street and Ewing Avenue. On three separate occasions, he saw defendant engage the customer in a brief conversation as they entered the store together. Based on these observations, Officer Baker believed that defendant was soliciting customers for prostitution and approached her to conduct a field interview. Officer Baker asked defendant her name and what she was doing on the corner, but she was unresponsive and "seemed [sic] little confused." Officer Baker did not feel threatened by defendant and asked her if she had anything on her that she should not have. Defendant responded, "Yes," and Officer Baker asked her, "What?" After asking her to elaborate several times, defendant finally answered, "PCP." At that time, Officer Baker detained defendant and requested a female officer to search her.

The trial court denied defendant's motion, finding that Officer Baker had a reasonable suspicion to believe that a crime was "underfoot" based on his observation of defendant's behavior that was consistent with soliciting for prostitution. The court also found that defendant's freedom was not infringed in any significant way and that defendant willingly volunteered that she had PCP. The court reasoned that "[c]ertainly the officers have the right to have conversations with anybody they see on the street

and person [sic] can choose not to talk to them or talk to them."

At the ensuing bench trial, the parties stipulated that, if Officer Baker were called to testify, his testimony would be substantially the same as during the suppression hearing. In addition, the parties stipulated that Officer Baker would have testified that after defendant was arrested, he requested a female officer to search defendant, the female officer recovered a vial containing clear liquid from defendant, and he inventoried that vial under inventory number 10207717. The parties also stipulated that if Officer Morandi were called to testify, she would have testified that she performed a custodial search of defendant and recovered a vial containing clear liquid. The parties further stipulated that a proper chain of custody was maintained at all times over the vial, and that forensic chemist Arthur Weathers, who received the vial in a sealed condition, performed tests commonly accepted in the area of forensic chemistry for ascertaining the presence of a controlled substance and opined within a reasonable degree of scientific certainty that the vial contained .5 grams of phencyclidine (PCP). Following the close of evidence, the trial court found defendant guilty of possession of a controlled substance.

On appeal, defendant first contends that the trial court erred in denying her motion to quash arrest and suppress evidence because the State failed to demonstrate that the officers had a reasonable articulable suspicion of criminal activity that would justify questioning her about contraband.

When reviewing a ruling on a motion to quash an arrest and suppress the evidence, we accord great deference to the trial court's factual findings and reverse

3

those findings only if they are against the manifest weight of the evidence; however, we review the trial court's ultimate legal ruling de novo. People v. Sorenson, 196 Ill. 2d 425, 431 (2001). Where no dispute exists as to the facts or witness credibility, the trial court's ruling will be reviewed de novo. People v. Gonzalez, 204 Ill. 2d 220, 223 (2003). When a determination as to an individual's constitutional rights depends upon legal conclusions that are based upon "undisputed facts," then a reviewing court may draw its own conclusions and may determine the reasonableness of a warrantless search de novo. Defendant does not challenge the factual rulings of the trial court; accordingly, we review the case de novo.

The fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution guarantee freedom from unreasonable searches and seizures by the government. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, § 6; People v. Flowers, 179 Ill. 2d 257, 262 (1997). The Illinois Supreme Court has recognized three tiers of police-citizen encounters, two of which implicate the fourth amendment. People v. Gherna, 203 Ill. 2d 165, 176-77 (2003). The first of these involves the arrest of a citizen, which must be supported by probable cause, i.e., sufficient facts and circumstances known by the arresting officers to warrant a reasonable person's belief that the arrested person has committed a crime. People v. Murray, 137 Ill. 2d 382, 387 (1990). The second relevant tier involves a brief investigative detention or Terry stop, which requires a reasonable suspicion, based upon specific and articulable facts, that the person has committed or is about to commit a crime. Murray, 137 Ill. 2d at 387; People v. Robinson, 322 Ill. App. 3d 169, 174 (2001). The third tier involves what is

4

commonly referred to as the community caretaking function, which does not require probable cause or reasonable suspicion. People v. Smith, 214 Ill. 2d 338, 352 (2005). "This function is totally divorced from the detection, investigation, or acquisition of evidence of a violation of a criminal statute." People v. Croft, 346 Ill. App. 3d 669, 673 (2004). An encounter is a function of community caretaking when an officer initiates it to check on an individual's well-being. People v. Simac, 321 Ill. App. 3d 1001, 1004 (2001). Encounters in the third tier do not involve coercion or detention and, therefore, do not constitute a seizure within the meaning of the fourth amendment. Smith, 214 Ill. 2d at 352.

The State argues that the officers were acting within a community caretaking function when they approached defendant, and that, consequently, their encounter with defendant was consensual and not a seizure. For that reason, the State concludes, the officers did not need a reasonable and articulable suspicion as to the presence of weapons or drugs in order to inquire about them.

The State, however, confuses encounters justified by the community caretaking function with consensual encounters. See, e.g., People v. Mitchell, 355 Ill. App. 3d 1030, 1033 (2005). For the community caretaking exception to justify a seizure, the seizure must be reasonable. Police conduct under the community caretaking exception is justified, not because it does not intrude upon an interest protected by the fourth amendment (U.S. Const., amend. IV), but because it intrudes upon such an interest in a way that is reasonable. People v. Ocon, 221 Ill. App. 3d 311, 314-15 (1991). The fourth

1-05-0811

amendment prohibits unreasonable searches and seizures.  People v. Hall, 352 Ill. App. 3d 537, 545 (2004).

The community caretaking function allows an actual seizure so long as it is reasonable under the circumstances.  People v. Luedemann, 357 Ill. App. 3d 411, 419 (2005).  The community caretaking exception applies under circumstances where a police officer seizes an individual for the purpose of helping the individual and evidence of a crime is then found in plain view.  Luedemann, 357 Ill. App. 3d at 419.  Conducting a field interview for the purpose of investigating whether defendant was soliciting patrons for prostitution is not police activity that can properly be characterized as community caretaking.  People v. Dent, 343 Ill. App. 3d 567, 578 (2003); see also Croft, 346 Ill. App. 3d at 674.

Having so concluded, we turn to defendant's contention that the officers had no reasonable, articulable suspicion of criminal activity to justify questioning her about contraband.  The reasonableness of an investigatory stop is analyzed under the principles of Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), and involves a dual inquiry: (1) whether the officer's action was justified at its inception and (2) whether it was reasonably related in scope to the circumstances that justified the stop in the first place.  People v. Gonzalez, 204 Ill. 2d 220, 228-29 (2003).

Here, there is no dispute that the initial stop of defendant was justified.  At issue is the second prong of the Terry analysis, which is determined under the framework set out in Gonzalez.  People v. Sloup, 359 Ill. App. 3d 841, 845 (2005).  Accordingly, we first determine whether the questioning of defendant was reasonably related in scope to

6

the purpose of the stop; if so, no fourth amendment violation took place. Gonzalez, 204 Ill. 2d at 235. If the questioning is not reasonably related to the purpose of the stop, we must consider whether Officer Baker had a reasonable, articulable suspicion of criminal activity that would justify the questioning. Gonzalez, 204 Ill. 2d at 235. If the questioning was justified, no fourth amendment violation occurred. Gonzalez, 204 Ill. 2d at 235. Last, in the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether, in light of all the circumstances and common sense, the questioning impermissibly prolonged the detention or changed the fundamental nature of the stop. Gonzalez, 204 Ill. 2d at 235.

Applying this analysis to the case at bar, we find that Officer Baker's question about contraband was reasonably related to the circumstances that prompted the stop, because it was reasonable for Officer Baker to suspect that defendant may have been under the influence of a controlled substance based on her perceived confusion and unresponsiveness to the initial inquires as to her name and what she was doing on the street corner. Sloup, 359 Ill. App. 3d at 846-47; see also People v. Smith, 208 Ill. App. 3d 44, 50-51 (1991). Thus, no fourth amendment violation occurred. See Gonzalez, 204 Ill. 2d at 235.

The responses to a police officer's initial inquiries may arouse further suspicion or dispel the questions in the officer's mind. Smith, 208 Ill. App. 3d at 50. In the latter instance, the stop may go no further and the individual should no longer be detained. Smith, 208 Ill. App. 3d at 50. In the former instance, the stop may be prolonged and the scope expanded. Smith, 208 Ill. App. 3d at 50; see also Sloup, 359 Ill. App. 3d at 847.

1-05-0811

This approach recognizes that investigatory stops are evolving encounters and that the court is not limited to considering the situation as it existed at the precise moment the stop occurred. Sloup, 359 Ill. App. 3d at 847. Because the questioning of defendant was reasonably related in scope to the purpose of the stop, we find the trial court did not err in denying defendant's motion to quash her arrest and suppress the evidence. See People v. Moore, 341 Ill. App. 3d 804, 810 (2003).

Defendant initially argued that her constitutional right of confrontation was violated where the record is devoid of evidence showing that she knowingly and intelligently waived that right before her trial counsel stipulated to the chain of custody and the chemical composition of the recovered substances and to the testimony of two police officers. However, based on the criteria recently set forth by the supreme court in People v. Phillips, 217 Ill. 2d 270 (2005), defendant withdrew this argument as indicated in her reply brief.

We note, however, the record shows that trial counsel's decision to stipulate to the evidence in question in order to preserve issues pertaining to her motion to quash arrest and suppress evidence was sound trial strategy, to which defendant did not object. Phillips, 217 Ill. 2d at 285-87. In addition, the stipulations did not state that this evidence was sufficient to convict defendant. Phillips, 217 Ill. 2d at 287-88. Under these circumstances, there was no need to admonish defendant of the stipulations and their consequences, or to secure her express agreement to them. Phillips, 217 Ill. 2d at 288.

8

CONSTITUTIONALITY OF DNA STATUTE

Last, defendant contends that the compulsory extraction and inclusion of her DNA in state and national databases, pursuant to section 5-4-3 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4-3 (West 2002)), violates her fourth amendment right to be free from unreasonable searches and seizures.

Defendant argues that under section 5-4-3(a-5), the compulsory extraction and perpetual storing of her DNA violates her fourth amendment right to be free from an unreasonable search and seizure. Defendant argues that taking a blood sample from her does not serve any special need beyond general law enforcement. Defendant also argues that even if a special need exists, the State's interests do not outweigh her privacy interests in her blood sample and her DNA.

Recently, the Illinois Supreme Court affirmed the constitutionality of the statute authorizing extraction and storing of DNA in People v. Garvin, No. 99031 (March 23, 2006). The supreme court held that the statute's purpose - to "absolve innocents, identify the guilty, deter recidivism by identifying those at a high risk of reoffending, or bring closure to victims" - "demonstrate[s] a special need beyond ordinary law enforcement." Garvin, slip op. at 13-14.

In Garvin, the defendant also argued that the State's interest in the blood sample and DNA did not outweigh his privacy interest "even in light of his felony conviction." Garvin, slip op. at 15. The supreme court noted that a convicted felon's privacy rights are "substantially reduced due to his status as a convicted felon." Garvin, slip op. at 15. The supreme court found "the State's interest in effective crime investigations and

9

prevention, as advanced by section 5-4-3, outweighs defendant's privacy interest as a convicted felon." Garvin, slip op. at 16. In conclusion, the supreme court rejected the defendant's constitutional challenge as follows: "We also hold that the DNA sampling and database mandated by section 5-4-3 is constitutional both as applied in defendant's case and on its face." Garvin, slip op. at 16.

Therefore, based on Garvin, we uphold section 5-4-3 as constitutional on its face and as applied to defendant. We conclude that the challenged statute does not violate defendant's fourth amendment right to be free from unreasonable searches and seizures and is constitutional.

## CONCLUSION

For the reasons previously discussed, we affirm the judgment of the circuit court of Cook County.

Affirmed.

O'BRIEN and NEVILLE, JJ., concur.