# Illinois Official Reports

## Appellate Court

---

### *In re Rafeal E.*, 2014 IL App (1st) 133027

---

| | |
|---|---|
| Appellate Court Caption | *In re* RAFEAL E., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Rafeal E., a Minor, Respondent-Appellant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-3027 |
| Filed<br>Rehearing denied | May 16, 2014<br>August 19, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent's adjudication of delinquency based on possession of controlled substances was reversed where the trial court erred in denying his motion to quash his arrest and suppress evidence, since the adjudication could not stand without the suppressed evidence and the record showed controlled substances were seized from defendant following a *Terry* stop that lacked any reasonable, articulable suspicion that defendant was involved in criminal activity or was armed and dangerous. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-JD-02519; the Hon. Stuart F. Lubin, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal    Michael J. Pelletier, Alan D. Goldberg, and Gabriell Green, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Eve Reilly, and Whitney Bond, Assistant State's Attorneys, of counsel), for the People.

Panel    PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Taylor concurred in the judgment and opinion.

**OPINION**

¶ 1    Minor respondent Rafeal E. was adjudicated delinquent for possession of controlled substances (heroin and cocaine) and sentenced to 18 months' probation. On appeal, respondent contends that the trial court erred in denying his pretrial motion to quash his arrest and suppress evidence, and he requests that the adjudication of delinquency entered on both counts of possession be reversed.

¶ 2    BACKGROUND

¶ 3    A petition for adjudication of wardship was filed on June 12, 2013, alleging that respondent was delinquent based on his being in possession of less than 14 grams of a substance containing heroin and less than 15 grams of a substance containing cocaine. Respondent filed a motion to quash his arrest and suppress evidence, alleging that he was seized without probable cause, or a reasonable, articulable suspicion of criminal activity, and without a warrant or exigent circumstances negating the need for such. Respondent thus sought suppression of the evidence seized as a result of the illegal arrest and seizure.

¶ 4    At the suppression hearing, Chicago police officer Millan testified that on May 25, 2013, he and his partner were in uniform in a marked squad car, patrolling the area of 1139 North Lawndale Avenue, and assigned to "Direct Commission, Operation Impact." Officer Millan testified that he knew the area to be a "high narcotics location" based on the drug-related arrests he had made on that block in the prior two months.

¶ 5    Officer Millan further testified that at 10 a.m. that day, he observed respondent standing and talking with four to six other individuals at the mouth of an alley. He acknowledged that when he first observed respondent standing there, respondent was not violating any laws. Defense counsel asked him whether he had an opportunity to approach and speak with respondent, and the officer answered, "Yes." Defense counsel also asked, "And when you spoke with the minor respondent, did you ask him to take his hands out of his pants?" and the officer clarified, "Out of his pockets," then answered, "Yes." After Officer Millan testified that he did not have a warrant to arrest or search respondent, defense counsel asked, "And at the time that the minor raised his hands, did you recover anything from the minor?" and the officer answered, "Yes." Officer Millan testified that he recovered a clear plastic bag with 10 individual ziploc bags with yellow tape from respondent's waistband. He then placed respondent in custody and recovered a green ziploc bag containing 10 individual knotted

- 2 -

plastic baggies of suspected crack cocaine from his back pocket. Officer Millan testified that respondent made no statements to him at that time, and he acknowledged that the items recovered from respondent would be used against him by the State. Defense counsel then asked, "Officer, at the time that the minor respondent took his hands out of his pockets that was in response to your order, correct?" and the officer answered, "Yes."

¶ 6    On cross-examination by the State, Officer Millan stated that he first observed respondent from a distance of 20 to 25 yards and that respondent looked in his direction and walked away from the group. He then described the manner in which respondent walked away as "like a brisk walk, with his hands in his pockets," and, after observing this, he drove directly parallel to respondent and asked him to stop. After respondent complied with his request, Officer Millan asked respondent to remove his hands from his pockets. When the State asked the officer why he made this request, he answered "for officer safety." The State then asked, "And when he removed his hands, where did he put them?" and the officer answered, "He put them straight up in the air." When the State asked if respondent's shirt lifted up as a result, the officer answered, "Yes, it did." Then, Officer Millan stated that he observed that "the top of [respondent's] pants were sagging down near his–his butt" and a plastic baggie protruding from respondent's waistband. When asked, "And you could see that after he had taken his hands out of his pockets, right?" the officer answered, "Correct." When asked, "Did you ask him to put his hands up in the air?" the officer answered, "No, actually I told him to put his hands up after I saw him with his hands in his pockets and he just put them straight up."

¶ 7    On further cross-examination, when asked, "And in your experience did you know what that plastic baggie was?" Officer Millan stated, "Based on my experience, I believed it was narcotics," explaining that a clear plastic sandwich bag is mostly used to carry small individual ziploc baggies. For that reason, he recovered the clear plastic bag and placed respondent in custody, whereupon a custodial search of respondent revealed a green ziploc bag in his back pocket containing 10 knotted baggies of suspected crack cocaine. Then, the State asked, "Now, let's move back to when you first approached minor respondent, did you ask him any other questions other than take your hands out of your pockets?" and the officer answered, "No." When asked, "And when you recovered the ziploc baggie that you saw protruding from minor respondent's–the top of his underwear, what did you find to be in that baggie?" the officer answered, "A white clear powdery substance, suspect white heroin." No further testimony was presented.

¶ 8    During argument, defense counsel contended that the motion should be granted because there was no reasonable suspicion, probable cause, or any other reason for Officer Millan to approach respondent and take a plastic bag out of his pants. Counsel pointed to Officer Millan's testimony that he did not observe respondent violating any laws, that respondent simply looked in his direction and walked away, and that respondent complied with his order to take his hands out of his pockets and raise his hands, thereby exposing the plastic sandwich bag protruding from his waistband. Counsel argued that Officer Millan did not know what was in that bag, and while it could have been anything, there was no reason to suspect that respondent was armed and dangerous and, thus, there was no reason to recover the bag. The State asked that the motion be denied because there was probable cause to arrest respondent when the plastic sandwich bag protruded from his waistband "in plain view." The State also argued that respondent was not in custody when Officer Millan merely asked him to take his hands out of his pockets. When the trial court asked the parties if there was anything else to

add, defense counsel stated, "Just that the State is correct in that the officer saw a plastic baggie in plain view. He did not see drugs in plain view."

¶ 9    In denying the motion to quash defendant's arrest and suppress evidence, the trial court found that Officer Millan had probable cause "based on seeing the bag and his experience as a police officer." The court noted that Officer Millan told respondent to take his hands out of his pockets, not put them "up in the air," and commented that "maybe if he had taken his hands out of his pockets and then just put them at his side his shirt wouldn't have lifted up and his pants wouldn't have sagged down," revealing the plastic sandwich bag protruding from his waistband. The court also found that once the officer saw the baggie in respondent's underwear, he had a duty to investigate further, stating that although baggies are used for sandwiches, "most people don't carry their sandwiches in their underwear frankly. So once [Officer Millan] recovered that, the search incident to arrest is fine."

¶ 10    At trial, Officer Millan provided testimony similar to that given at the hearing on respondent's motion to quash arrest and suppress evidence. He added that on the date in question, he was working in his capacity as a member of the "Area North, Saturation Team." He testified that respondent took his hands out of his pockets, as requested, and then "put his hands straight up in the air and I saw a clear plastic baggie protruding from his waistband." He added that the recovered contraband remained in his constant care, custody, and control at all relevant times. Further evidence at trial included stipulated testimony regarding the forensic analysis and positive identification of the contraband as heroin and cocaine. The trial court found respondent guilty of both counts of possession of a controlled substance beyond a reasonable doubt and adjudged him a delinquent minor.

¶ 11                                    ANALYSIS

¶ 12    In this appeal, respondent contends that the trial court erred in denying his suppression motion by finding that there was sufficient reasonable suspicion for the police to stop him. He also challenges the propriety of the subsequent seizure of the plastic sandwich bag protruding from his waistband as exceeding the scope of a *Terry* stop.

¶ 13                              I. Standard of Review

¶ 14    When reviewing a trial court's ruling on a motion to quash an arrest and suppress evidence, we accord great deference to the trial court's factual findings unless they are against the manifest weight of the evidence, but review *de novo* the legal question of whether suppression is warranted under those facts. *People v. Hopkins*, 235 Ill. 2d 453, 471 (2009). Here, respondent does not contest the credibility of the witnesses, but challenges the trial court's ultimate legal conclusions based on undisputed facts, which we review *de novo*. *People v. James*, 365 Ill. App. 3d 847, 850 (2006).

¶ 15    The fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, § 6) protect individuals from unreasonable searches and seizures. *People v. Colyar*, 2013 IL 111835, ¶ 31. The supreme court has recognized that not every encounter between the police and a private citizen results in a seizure, and it has identified three tiers of police-citizen encounters. *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). These are: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, or *Terry* stops, which must be supported by a

reasonable, articulable suspicion of criminal activity; and (3) consensual encounters, which involve no coercion or detention and thus do not implicate fourth amendment interests. *Luedemann*, 222 Ill. 2d at 544.

## II. A *Terry* Stop Occurred

Respondent contends that he was subject to a *Terry* stop, and therefore seized, when a marked squad vehicle pulled alongside him while he was on foot and an officer ordered him to stop walking, take his hands out of his pockets, and "put his hands up." We agree that a *Terry* stop occurred. The State argues that the encounter was consensual. The issue that divides the parties is whether Officer Millan's conduct conveyed " 'a show of authority, [such that the defendant's] freedom of movement [was] restrained.' " *People v. Jackson*, 389 Ill. App. 3d 283, 287 (2009) (quoting *People v. Cosby*, 231 Ill. 2d 262, 273 (2008), citing *United States v. Mendenhall*, 446 U.S. 544, 553 (1980)).

## A. Show of Authority

In *Mendenhall*, the United States Supreme Court listed four circumstances in which a nonconsensual seizure might occur: (1) the threatening presence of several officers; (2) an officer's display of a weapon; (3) the physical touching of the individual's person; or (4) " 'the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *Cosby*, 231 Ill. 2d at 274 (quoting *Mendenhall*, 446 U.S. at 554). In determining whether a seizure occurred, the appropriate inquiry, which "presupposes a reasonable *innocent* person," is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter. (Emphasis in original.) *Luedemann*, 222 Ill. 2d at 551 (citing *Florida v. Bostick*, 501 U.S. 429, 438 (1991)). This requires an objective evaluation of the police conduct in question and does not hinge upon the subjective perception of the person involved. *Luedemann*, 222 Ill. 2d at 551. A seizure does not occur simply because a police officer approaches an individual and puts questions to that person if the person is willing to listen. *Luedemann*, 222 Ill. 2d at 551.

The evidence presented supports respondent's position that his encounter with Officer Millan was a *Terry* stop, rather than a consensual encounter. Although there was no evidence of several officers, a weapon display or physical touching to accomplish the stop, a marked squad vehicle with two officers pulled alongside a man on foot and ordered him to stop walking and to take his hands out of his pockets. A reasonable person would have believed that, with the officer's two consecutive orders, compliance "might be compelled." *Mendenhall*, 446 U.S. at 554; *Jackson*, 389 Ill. App. 3d at 288. In *Jackson*, this court found that when a police officer approaches an individual and immediately tells him "to remove his hands from his pockets," a reasonable person would understand that statement as a command, not a request, and when the individual complied, a seizure took place. *Jackson*, 389 Ill. App. 3d at 288. Here, as in *Jackson*, Officer Millan ordered respondent to stop walking, and when respondent did so, he next ordered respondent to take his hands out of his pockets and "put his hands up." Under *Jackson*, 389 Ill. App. 3d at 288 (and cases cited therein), when respondent complied, there was a seizure. Officer Millan answered affirmatively when asked on direct examination whether "at the time that the minor respondent took his hands out of his pockets that was in response to your *order*, correct?" (Emphasis added.) A consensual encounter, as argued by the State, loses its consensual nature when a police officer conveys a message by a

" 'show of authority, that induces the individual to cooperate.' " *Jackson*, 389 Ill. App. 3d at 288 (quoting *People v. Gherna*, 203 Ill. 2d 165, 179 (2003)). Although in *Jackson*, the officer repeatedly ordered the defendant to remove his hands from his pockets, the totality of circumstances in this case shows that the encounter fell somewhere between those instances "when a police officer approached an individual and told him he ' "needed to talk" ' with him" (*Jackson*, 389 Ill. App. 3d at 288 (quoting *People v. Ocampo*, 377 Ill. App. 3d 150, 160-61 (2007))), and " 'when the defendant was told to stop and to remove his hands from his pockets' " (*Jackson*, 389 Ill. App. 3d at 288 (quoting *People v. Smith*, 331 Ill. App. 3d 1049, 1053 (2002))), which would lead a reasonable innocent person under identical circumstances to believe that he was not free to decline the officer's request or otherwise terminate the encounter. The totality includes: (1) the physically intimidating act of a marked police vehicle pulling alongside a man on foot; (2) an officer then immediately exiting the vehicle and directing orders to defendant, thus indicating that he is their target; and (3) the issuance of not one but two consecutive orders.

¶ 21    This is especially true when respondent was told to "put his hands up." We fully accept the trial court's factual finding that the officer did not tell respondent to stick his hands way "up in the air." However, this finding is still consistent with the officer's testimony that he "told him to put his hands up." Whether the officer told respondent to put his hands up and out of his pockets or up in the air, the officer's order still constituted a show of authority.

¶ 22                                B. Show of Authority

Second, respondent submitted to the officer's show of authority. In denying the suppression motion, the trial court noted that during direct examination, Officer Millan testified that he told respondent to take his hands out of his pockets, but on cross-examination by the State, the officer stated, "No, actually I told him to put his hands up after I saw him with his hands in his pockets and he just put them straight up." On further cross-examination by the State, the officer answered negatively when asked, "Now, let's move back to when you first approached minor respondent, did you ask him any other questions other than *take your hands out of your pockets?*" (Emphasis added.) Under either scenario, "a defendant is not seized when he ignores a show of [police] authority" (*People v. Billingslea*, 292 Ill. App. 3d 1026, 1030 (1997) (citing *People v. Ramirez*, 244 Ill. App. 3d 136, 145 (1993))), and the seizure of an individual "requires *either* physical force *** *or*, where that is absent, *submission* to the assertion of authority" (emphases in original) (*California v. Hodari D.*, 499 U.S. 621, 626 (1991)). As made clear by the testimony of Officer Millan, respondent's response to the officer's assertion of authority constituted a submission to that authority, and respondent was thereby seized for purposes of the fourth amendment.

¶ 23                              III. No Reasonable Suspicion
¶ 24    Having determined that Officer Millan's encounter with respondent constituted a *Terry* stop, we next determine whether he had a reasonable, articulable suspicion that respondent was involved in criminal activity or armed and dangerous. *People v. Tate*, 367 Ill. App. 3d 109, 115 (2006). Specifically, we must determine whether the police had valid justification for seizing respondent at that time. *People v. Smith*, 331 Ill. App. 3d 1049, 1054 (2002). In doing so, we consider the totality of the circumstances. *People v. Byrd*, 408 Ill. App. 3d 71, 87 (2011).

¶ 25 "An investigatory stop of a private citizen is allowed only when the police officer has specific, articulable facts which, when taken together with rational inferences, create a reasonable suspicion that the private citizen is involved in criminal activity." *People v. Lockhart*, 311 Ill. App. 3d 358, 361 (2000); *Terry v. Ohio*, 392 U.S. 1, 27 (1968); 725 ILCS 5/107-14 (West 2008). Mere hunches and unparticular suspicions are insufficient. *Smith*, 331 Ill. App. 3d at 1054. Although the facts forming the basis of reasonable suspicion need not rise to the level of probable cause and do not require an officer to actually observe the commission of a crime, precedent dictates that the necessary quantum of suspicion exist prior to the stop or detention. *People v. Estrada*, 394 Ill. App. 3d 611, 616, 619 (2009) (construing *Delaware v. Prouse*, 440 U.S. 648 (1979)).

¶ 26 The State contends that the present case is similar in every relevant way to *Illinois v. Wardlow*, 528 U.S. 119 (2000), and should therefore be decided accordingly. In *Wardlow*, 528 U.S. at 121-22, uniformed police officers conducting a special narcotics operation and patrolling in a four-car caravan observed the defendant standing next to a building in a high drug-trafficking area holding an opaque bag. The defendant looked in the direction of the officers and fled, and the officers "watched him as he ran through the gangway and an alley." *Wardlow*, 528 U.S. at 122. The officers eventually cornered the defendant on the street, stopped him, and, in the ensuing protective search, found a loaded handgun inside the opaque bag. *Wardlow*, 528 U.S. at 122. The United States Supreme Court determined that these circumstances justified the investigatory stop of the defendant. *Wardlow*, 528 U.S. at 125. In so determining, the Supreme Court found that an individual's unprovoked "headlong flight" down an alley, plus his presence in a high-crime neighborhood, equaled reasonable suspicion justifying a *Terry* stop. *Wardlow*, 528 U.S. at 123-24; *People v. Jackson*, 2012 IL App (1st) 103300, ¶ 23.

¶ 27 The State argues that here, as in *Wardlow*, respondent was observed in a "high narcotics location" and he "fled" upon noticing the police. The State also notes that Officer Millan testified that he had made drug-related arrests on that block in the prior two months. These circumstances, the State argues, justified the investigative stop of respondent.

¶ 28 *Wardlow* involved headlong flight *into* an alley and away from police vehicles. The case at bar involves briskly walking *away* from an alley and also away from a group of individuals. The officer's testimony was that respondent was walking away from the group that he had been standing with; the officer did not state that respondent was walking away from the police vehicle. In this appeal, the State asks us to extend *Wardlow* (1) from headlong running to briskly walking; (2) from running down an alley to walking away from an alley and toward an open and exposed sidewalk; and (3) from heading away from police vehicles to heading away from a group of five to six individuals. We cannot see how walking away, briskly or not, and heading to an open sidewalk where the police had easy access to the respondent could possibly constitute evasive behavior. In addition, the officer testified that respondent walked away from his group not away from the police vehicle. Thus, *Wardlow* bears little relationship to our facts.

¶ 29 Without a three-pronged extension of *Wardlow*, there is no other source of reasonable suspicion. No evidence was presented that the police suspected respondent of committing any narcotics transactions. *People v. Harris*, 2011 IL App (1st) 103382, ¶ 15. Officer Millan did not testify to observing any behavior by respondent or his companions to arouse his suspicion as to possible narcotics trafficking. *In re Mario T.*, 376 Ill. App. 3d 468, 476 (2007). In fact, nothing about respondent's activity suggested criminal activity; Officer Millan testified that he

observed respondent standing and talking with four to six others at the mouth of an alley. Respondent did not run or even walk down the alley. Respondent walked near the curb of the street where the officers asked respondent to stop only after observing him briskly walk away with his hands in his pockets. Also, respondent had no outstanding warrants. *People v. Croft*, 346 Ill. App. 3d 669, 676 (2004).

¶ 30    There is nothing criminally suspicious about walking down the street with one's hands in one's pockets, whether it was on a cold night in Chicago (*In re Kendale H.*, 2013 IL App (1st) 130421, ¶ 42), or, as noted by the State in this case, on a "likely warm" morning in May, where the contextual evidence introduced by the State reasonably suggests that respondent was holding up his pants, which "were sagging down near his–his butt" when he removed his hands in compliance with Officer Millan's directive. Putting something in one's pockets, in this case, one's hands, is not a hallmark of criminal activity. *Smith*, 331 Ill. App. 3d at 1055.

¶ 31    Moreover, the State's characterization of respondent's conduct as "unprovoked flight upon noticing the police," is unavailing because the "headlong flight" that justified a *Terry* stop of the defendant in *Wardlow* bears no resemblance to respondent's conduct in this case. "*Running* from a police officer is different from casually *walking* through an alley." (Emphases added.) *People v. Leggions*, 382 Ill. App. 3d 1129, 1135 (2008). Here, he did not even walk into the alley. In addition, there was no testimony describing the "headlong flight" or running into an alley as in *Wardlow*. Rather, respondent was standing and talking with a group of individuals at the mouth of an alley, in the area of 1139 North Lawndale Avenue in Chicago, which the officer described as a "high narcotics location." Respondent looked in the direction of the police and briskly walked away from the group with his hands in his pockets. We decline to read *Wardlow* so broadly as to equate "headlong flight" with briskly walking. Mindful that "[h]eadlong flight–wherever it occurs–is the consummate act of evasion" (*Wardlow*, 528 U.S. at 124), we cannot agree with the State's assertion that briskly walking "undoubtedly alerted the reasonable Officer Millan to the possibility of criminal activity afoot," particularly in light of the officer's testimony that he did not observe respondent violating any laws.

¶ 32    It was made clear by the testimony of Officer Millan that respondent's response to the police officer's assertion of authority constituted a submission to that authority, and respondent was seized for the purposes of the fourth amendment, which constituted a *Terry* stop. The officer did not have a reasonable, articulable suspicion that respondent was involved in criminal activity or armed and dangerous. Thus, the police did not have valid justification for seizing respondent and, thus, the trial court erred in denying respondent's motion to quash arrest and suppress evidence. As a result, we do not have to decide whether the officer exceeded the scope of the *Terry* stop when he reached into respondent's pants waistband to recover the plastic bag.

¶ 33                                                    CONCLUSION

¶ 34    For the reasons stated, we conclude that the trial court erred in denying respondent's motion to quash arrest and suppress evidence (*People v. Garcia*, 2012 IL App (1st) 102940, ¶ 17), and because the State cannot prevail on remand without the suppressed evidence, we reverse respondent's adjudication of delinquency (*People v. Trisby*, 2013 IL App (1st) 112552, ¶ 19).

¶ 35          Reversed.