THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. SHELLY R. ROCKEY, Defendant-Appellee.

Second District No. 2—00—0349

Opinion filed June 20, 2001.

Michael P. Bald, State's Attorney, of Freeport (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Alan W. Cargerman, of Fearer, Nye, Ahlberg & Chadwick, of Oregon, for appellee.

JUSTICE CALLUM delivered the opinion of the court:

Defendant, Shelly R. Rockey, was charged with driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(a)(2) (West 1998)) as

the result of an incident on April 15, 1999. Because she refused or failed to complete blood-alcohol testing, defendant, who qualified as a first-time offender, received a statutory summary suspension of her driving privilege for six months. Defendant petitioned to rescind the suspension, alleging that there was no probable cause (reasonable ground) or constitutional basis to stop or detain defendant or her vehicle. After an evidentiary hearing, the trial court granted defendant's petition to rescind on July 7, 1999. The State filed a motion to reconsider.

Defendant also filed a motion to suppress evidence. The parties apparently agreed that no further evidence would be taken, and arguments were presented to the court based on the same evidence received during the rescission hearing. In March 2000, the court granted defendant's motion to suppress evidence and denied both the State's motion to reconsider the rescission order and its motion to reconsider the suppression order.

The State timely appeals, arguing that the trial court erred in granting defendant's petition and motion because the "evidence adequately supported an articulable and reasonable basis" for a *Terry* or investigative stop that led to defendant's subsequent arrest for DUI. We affirm the trial court's orders.

At the suspension hearing, Deputy Sheriff Pamela Wilson testified that, between 12 and 1 a.m., she was driving an unmarked vehicle in Cedarville, a residential village having a population of about 400. She was wearing a shirt marked "Police" on the front of it, and she had a badge. Driving south on Route 26 (Stephenson Street), she passed Oak Street, an east-west street, when she observed on her right what looked like a pickup truck with its lights on parked in the north-south alley that runs between Stephenson Street and Harrison Street. She went around the block by going down to Cherry Street, then Harrison Street, and turned onto Oak Street, heading east toward Stephenson. She then observed the vehicle turning right from Oak south onto Stephenson. When Wilson got to Stephenson, she saw the vehicle turn west onto Cherry. In effect, Wilson followed the vehicle around the block so that both vehicles were going west on Cherry Street. Defendant's vehicle turned northbound onto Harrison and then turned into a driveway off of Harrison Street. Wilson pulled onto Harrison and stopped in the street "just prior" to the driveway.

When asked what was suspicious about this vehicle, Wilson noted the time of morning and the proximity of the alley to Barkau's auto dealership, which had been burglarized "numerous times before," and she said her suspicion was raised because in the prior 10 days there had been a lot of business burglaries. When asked what facts Wilson

had that might lead her to believe defendant was breaking into any cars since she was not on the lot, Wilson replied that she had none but felt she had a duty to check out the situation.

Wilson said she did not stop the vehicle. Defendant got out of her vehicle and started walking toward Wilson's car as Wilson called in her location to the dispatch office. Wilson got out and met defendant about "half way" near the end of the short driveway. Wilson asked defendant if she lived at the address where she pulled into the driveway. Wilson "felt" that defendant was trying to avoid having a vehicle behind her for some reason. Wilson thought it was unusual for a vehicle to go around the block. Defendant said she did not live at that address, but her ex-boyfriend lived there. Defendant walked from the driver's door to the back end of her truck. While speaking with defendant, Wilson could smell a "very strong odor of [an] alcoholic beverage" on her breath, and as she walked back, Wilson noticed that she "staggered somewhat." Defendant was not under arrest. Wilson asked her for identification because of her suspicion regarding her presence in the alley, the odor of the alcoholic beverage, and the staggering. Wilson stated that this was her "probable cause to believe that possibly she might be under the influence of alcohol." Wilson was asked to explain her statement and the term "possibly." When asked whether she had probable cause to believe defendant had committed a crime at that time, Wilson replied, "No."

After obtaining defendant's driver's license, Wilson told defendant to wait. Wilson detained defendant while Wilson went to her police car, made a call for assistance, and ran a record check. When asked what the basis was for making defendant stay in place while she ran a record check and defendant was not arrested for anything, Wilson answered, "I had known [defendant] in the past to have had a suspended driver's license, so to run a check to see if she was suspended any longer, and *** the fact that at that time, due to the odor of alcohol and her staggering, I—to see if she was okay to drive."

When asked what defendant had done wrong to be detained, Wilson answered, "At that point she hadn't done anything wrong." When defendant handed over her driver's license and Wilson saw her name, she remembered that defendant had been suspended, but Wilson did not remember how many years before this had occurred; Wilson wanted to know if defendant was still suspended.

On cross-examination, Wilson further testified that there were numerous burglaries in the prior 10 days throughout the county, but none were in Cedarville. Wilson stated that the license came back "valid." Wilson was suspicious that defendant had not taken the most direct route to the driveway.

On redirect examination, Wilson agreed that, if defendant had backed out of the driveway and gone around the block, Wilson would have let her go, but then Wilson acknowledged that defendant would not have been free to go until Wilson had detained her to make the driver's license check.

Defendant argued that a seizure took place in the driveway for fourth amendment purposes and that there was no probable cause to believe that an offense had been committed and no articulable facts to warrant a *Terry* detention. The State argued that the officer had reasonable suspicion because the vehicle was stopped in the alley at night, there had been numerous burglaries in the county, circuitous driving led the officer to believe that there was an attempt to evade, and a valid investigatory stop was made. The State concluded that "together with all the facts, that certainly the officer did have reason to stop the vehicle and therefore thereafter, once upon smelling the alcohol and observing the walking, to proceed with the questioning [*sic*] arrest therefrom." In granting defendant's petition, the court stated, "The Court does not believe that the officer's suspicion in this instance was reasonable." The court later granted defendant's motion to suppress.

■ A ruling on a petition to rescind or a motion to suppress has generally been reviewed applying a manifest error standard. See *People v. Scott*, 249 Ill. App. 3d 597, 601 (1993). Thus, in reviewing the lawfulness of a search or seizure, when the trial court's ruling involves factual determinations and credibility assessments, the decision will be reversed on appeal only if it is manifestly erroneous or against the manifest weight of the evidence—that is, only where an opposite conclusion is clearly evident from the record. *People v. Buss*, 187 Ill. 2d 144, 204 (1999); *Scott*, 249 Ill. App. 3d at 601. A trial court's determination regarding factual matters, including the reasonable inferences to be drawn from the witnesses' testimony, is entitled to deference by the reviewing court. *People v. Robinson*, 322 Ill. App. 3d 169, 173 (2001); *People v. Sanchez*, 292 Ill. App. 3d 763, 768 (1997). However, where there is no factual or credibility dispute and the question involves only the application of the law to the undisputed facts, our standard of review is *de novo*. *People v. Sims*, 192 Ill. 2d 592, 615 (2000); see *Sanchez*, 292 Ill. App. 3d at 768 (trial court's ultimate determination regarding reasonableness of warrantless search is subject to *de novo* review); see also *In re G.O.*, 191 Ill. 2d 37, 46-50 (2000) (contrasting deferential manifest error standard applicable to factual findings with *de novo* standard applicable to ultimate questions involving reasonable suspicion and probable cause).

The State first argues on appeal that the officer never stopped defendant's vehicle because the officer merely approached defendant

after defendant had parked her vehicle. The State concludes that the fourth amendment prohibition against unreasonable searches and seizures was not implicated as this was presumably a consensual police-citizen encounter rather than a "seizure." See *Scott*, 249 Ill. App. 3d at 603.

Without specifically informing this court of the precise moment when the stop did take place, the State then argues that, even assuming *arguendo* there was a *Terry* stop, it was justified because defendant's behavior was suspicious—because it was early in the morning, she was present near Barkau's car dealership, there had been a number of business burglaries in the "area" (*i.e.*, the county), Barkau's had been burglarized a number of times before, and the circumstances warranted further investigation. The State concedes that an individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. *Illinois v. Wardlow*, 528 U.S. 119, 124, 145 L. Ed. 2d 570, 576, 120 S. Ct. 673, 676, (2000). However, the State argues that defendant's "evasive" behavior coupled with the officer's knowledge of the area justified the officer's "preliminary investigation."

■ We first address whether and when there was a stop or seizure of defendant and whether it was lawful. A warrantless search or seizure is unreasonable *per se* unless it comes within a specific, well-delineated exception to the constitutional warrant requirement such as a valid, investigative *Terry* stop or an arrest based upon probable cause. *People v. Ertl*, 292 Ill. App. 3d 863, 868 (1997). An officer may make a valid investigatory stop of a person in a public place when the officer reasonably infers from all the facts and circumstances that the person is committing, has committed, or is about to commit an offense. *Ertl*, 292 Ill. App. 3d at 868. The inquiry concerns whether the officer's conduct was reasonable under the circumstances known to the officer at the time the stop was initiated, and the officer's inferences must be based on more substantial facts than would support a mere hunch. *Ertl*, 292 Ill. App. 3d at 868. The reasonableness of the police conduct depends upon balancing the public's interest and the individual's right to personal security free from arbitrary interference by law officers. *People v. Pantoja*, 184 Ill. App. 3d 671, 674 (1989).

■ First, we agree that the initial encounter when the defendant stopped her truck in the driveway and then approached the officer was not a stop or "seizure" for fourth amendment purposes, because defendant's conduct appears to have been voluntary and there was no show of authority by the officer at that time. See *Scott*, 249 Ill. App. 3d at 603.

The stop occurred when the officer took defendant's facially valid driver's license and told her to wait until she could run a record check of the license. A person is "seized" when, by means of physical force or a show of authority, that person's freedom of movement is restrained, and a court will consider whether, in view of all the circumstances, a reasonable person would have believed he or she was not free to leave. *People v. Brownlee*, 186 Ill. 2d 501, 517 (1999). Furthermore, the fourth amendment applies even to seizures that involve only a brief detention short of arrest. *Brownlee*, 186 Ill. 2d at 518. Here, a reasonable person would not have felt free to leave once her license was taken from her, and the officer testified that defendant would not have been free to leave without being detained for the driver's license check. See *People v. McVey*, 185 Ill. App. 3d 536, 539 (1989) (seizure occurred when officer required defendant to return to his car while officer ran computer check); see also *People v. Branch*, 295 Ill. App. 3d 110 (1998) (absent particularized suspicion that defendant-passenger had committed a crime, officer had no authority to request and run a warrant check on identification of defendant).

We next examine whether the stop was objectively justified. A person cannot lawfully be seized unless there are reasonable, objective grounds for doing so, and, to sustain a *Terry* stop, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *McVey*, 185 Ill. App. 3d at 539.

The State argues that, to the extent there was a stop, the officer's suspicion was justified because defendant was present early in the morning in an area that had been known to have burglaries (at some undetermined time in the past) and defendant was "evasive." However, the officer testified that she had no facts leading her to believe that defendant was breaking into any cars; the officer later conceded that there were burglaries in the county in the previous 10 days, but none were in Cedarville. Furthermore, although the officer "felt" that defendant was trying to avoid having a vehicle behind her "for some reason," the facts known to the officer point to no more than an impermissible hunch. There is no sound basis to believe that defendant was evading a police officer, who was driving an unmarked car, merely because defendant drove around the block. In fact, defendant stopped and voluntarily approached the officer. We simply cannot equate this conduct with the suspicious type of headlong flight of the defendant in a high-crime area known for heavy narcotics trafficking that was described in *Illinois v. Wardlow*. See also *People v. Vanderver*, 158 Ill. App. 3d 178 (1987) (police lacked reasonable, articulable suspicion of criminal activity where car was driven down residential

street at slow rate of speed at 2:30 a.m., stopped, and changed direction in apartment complex where there had been numerous car thefts). Thus, the stop cannot be sustained on the basis of a reasonable suspicion that an offense was being committed prior to defendant's stopping in the driveway.

The State then jumps to a cursory and conclusory probable cause argument, citing a case where the reviewing court was principally concerned with whether consent to submit to a blood-alcohol test was necessary to introduce evidence of the result in a DUI trial under the statute then in force. *Village of Algonquin v. Ford*, 145 Ill. App. 3d 19 (1986) (in ruling on whether consent was necessary for compulsory blood test, court also found that officer had "probable cause to investigate" and administer field sobriety tests to a motorist whose vehicle was stopped with the motor running and the lights on and the motorist was slumped over the steering wheel and did not respond to the officer's attempts to arouse her). The State merely concludes that a "similar result should obtain here, based on the foregoing circumstances." This conclusory argument fails to explain exactly how the cited case applies to the one at bar and lacks the detailed legal analysis that would aid this court in determining whether and when defendant was also lawfully seized for DUI purposes, as the State seems to suggest. Arguing an issue in a conclusory fashion or failing to adequately brief or argue an issue results in the waiver of the issue. *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 401 (1987).

Even absent waiver, we believe the State's argument fails. *Ford* is inapposite because there the driver's lethargic state, in a parked car that was running with the lights on, indicated the driver was severely impaired and was DUI. In the present case, although the officer's testimony notes, in passing, that field sobriety tests were later performed, there is no testimony regarding when and how the sobriety tests were administered. Thus, we do not reach the issue whether probable cause to arrest developed after the tests were administered.

An officer may have probable cause to arrest when the totality of the facts known to the officer are such that a reasonable, prudent person would believe that the suspect is committing or has committed a crime. *Scott*, 249 Ill. App. 3d at 601. In this case, the officer's testimony regarding the reason for the detention or "seizure" of defendant is problematic because the testimony is at times either equivocal or inconsistent. The officer testified that she asked for the identification because of her suspicion regarding defendant's presence in the alley, the strong odor of the alcoholic beverage, and because defendant "staggered somewhat." She stated that she had "probable

cause" to believe that "possibly" defendant "might be under the influence of alcohol." However, when then asked whether she had probable cause to believe defendant had committed a crime at the time, the officer said, "No." She then testified that the reason for the license check was because she thought that defendant's license was suspended at some prior undetermined time, and she added, ambiguously, "to see if she was okay to drive." However, when defense counsel asked what defendant had done wrong to be detained, the officer replied, "At that point she hadn't done anything wrong."

The officer then stated she wanted to know if defendant's license was still suspended. The officer further testified that she would have let defendant back out of the driveway and go—but not until she had detained defendant to make the driver's license check. The natural inference here is that the officer was concerned not about defendant's fitness to drive but whether defendant had a lawful license to drive.

We conclude that the testimony does not support probable cause to believe defendant had committed an offense. The State failed to further develop the DUI issue in the trial court where it could easily have done so. The officer did not observe defendant violate any laws or drive in an erratic manner, and the indicia of intoxication for probable cause to develop in the officer's presence are ordinarily far more substantial than the two mentioned in this officer's testimony. See, e.g., Scott, 249 Ill. App. 3d 597 (indicia included staggering, swaying while standing, odor of alcohol, slurred speech, and bloodshot eyes). Although the officer stated defendant was "possibly" under the influence of alcohol, her reasons for the detention focus on the officer's ultimately incorrect suspicion or hunch that defendant was driving with a suspended license—a suspicion that had no reasonable, factual basis at the time of the stop and is, without more, insufficient to support a lawful Terry stop.

To conclude otherwise would be to approve of the detention of any driver at any time to run a license check if the officer thought the driver had committed an offense on a prior occasion. The constitutional test of reasonable and particularized suspicion does not support such a proposition. See United States v. Hairston, 439 F. Supp. 515 (N.D. Ill. 1977) (absent reasonable suspicion that suspect was armed and dangerous, officer, who recognized defendant's name on license as that of ex-convict, violated fourth amendment in searching defendant); Branch, 295 Ill. App. 3d at 114 (absent reason to suspect that backseat passenger was committing a crime, officer did not have authority to request identification and exceeded the scope of the detention of driver that had terminated).

Here, the trial court did "not believe that the officer's suspicion in

this instance was reasonable." The trial court did not make more specific findings of fact in support of its suppression order as was its statutory responsibility to do. 725 ILCS 5/114—12(e) (West 1998); *In re G.O.*, 191 Ill. 2d 37, 50 (2000). While the trial court should have made more specific factual findings in reaching its conclusion, a remand is not necessary in this case. Instead, we must presume that, in the absence of express findings of fact, the trial court credited only that part of the testimony that supports its ruling. *People v. Winters*, 97 Ill. 2d 151, 158 (1983). Here, this also means that the trial court implicitly discredited the testimony regarding the basis for the detention.

Although the credibility of a witness and the weight to be given the testimony are primarily within the province of the trier of fact, a reviewing court is not precluded from considering the quality and credibility of the evidence. *People v. Bierman*, 163 Ill. App. 3d 256, 260 (1987). Even where several reasonable inferences are possible from the conflicting testimony, we must accept those that support the trial court's orders. *Nemeth v. Banhalmi*, 125 Ill. App. 3d 938, 963 (1984). To the extent that a question of fact was presented regarding the basis for the detention of defendant, we conclude that the trial court's decision that the detention was unwarranted was neither manifestly erroneous nor against the manifest weight of the evidence.

To the extent that the undisputed facts presented a question of law to be reviewed *de novo*, we conclude that the officer's stated reasons for the detention of defendant amounted to mere suspicion or hunches insufficient to support either reasonable suspicion or probable cause.

The judgment of the circuit court of Stephenson County is affirmed.

Affirmed.

GEIGER and BOWMAN, JJ., concur.