No. 2--04--0968                                         filed: 8/10/06

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lee County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 03--CM--517 |
| ROBERT Z. TATE, | ) ) | Honorable Charles T. Beckman, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Robert Z. Tate, was charged by criminal complaint with possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2002)), unlawful consumption of liquor (235 ILCS 5/6--20 (West 2002)), and unlawful possession of less than 2.5 grams of cannabis (720 ILCS 550/4(a) (West 2002)). Defendant moved to suppress evidence obtained by the police as being unlawfully seized. The trial court granted the motion and denied the State's motion to reconsider. The State filed a certificate of impairment pursuant to Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1)) and a timely notice of appeal. We affirm.

Two police officers and defendant testified at the suppression hearing. Defendant, who was 17 years old at the time of the hearing, testified that on October 30, 2003, he drove to his brother's residence in Dixon. It was dark when defendant pulled into the

driveway. Defendant parked behind his brother's truck, which was behind a friend's vehicle. After parking, defendant went through the center console of his car, looking for "a lighter or something." At that point, defendant was approached by police, who "said something like get out of the car." Defendant testified that the windows to his car were rolled up because it was cold and that he did not hear the police officers until they were right beside his car. Defendant could see only flashlights shining through the windows. One of the police officers opened the passenger-side door and pushed him while another police officer opened the driver-side door and pulled him out. Defendant testified that he did not have the opportunity to get out of the car on his own. Defendant was thrown, face down, on the ground, his hands were placed behind his back, and he was handcuffed. The officers then stood defendant on his feet and asked him "a bunch of questions."

Defendant further testified that he was wearing a purple wig and purple sunglasses because it was "pretty close to Halloween," and he wanted to scare his brother. Defendant testified that when he heard that the individuals with the flashlights were police officers, he removed the wig and sunglasses and put his hands straight up.

After defendant testified, the State called two police officers. Officer Anthony Quadraro of the Dixon police department testified that, on October 30, 2003, at approximately 8:15 p.m., he was involved in the execution of a search warrant at 823 North Dement. The search warrant was based upon someone's observation of a bag of cannabis at the house, and it authorized the seizure of evidence of cannabis possession. The officers were also advised that Phillip Hall may be in the residence. Hall had an outstanding arrest warrant for damaging property of Quadraro. While the warrant was being executed, it was Quadraro's assignment to provide perimeter security.

Approximately one minute after police officers had entered the house, a car pulled into the driveway. Quadraro approached the car for the purpose of officer safety because the house had not yet been secured. Quadraro testified that he told the driver of the vehicle to show him his hands. Quadraro used "loud, repetitive commands" and stood next to the vehicle. Quadraro did not hear music coming from the car and he looked directly at the driver's face. Quadraro believed he made eye contact even though the driver was wearing sunglasses.

Quadraro testified that he was wearing an olive green flight suit with Dixon police patches on it. He was also wearing over the flight suit a black bulletproof tactical vest with the word "police" in white lettering across the front and back. Quadraro testified that there were no police cars visible in front of the residence. Therefore, the driver, whom he later learned was defendant, would not have known the police officers were present when he arrived.

Quadraro testified that he could not say how many times he yelled for defendant to raise his hands but that it was definitely more than two times. Defendant did not show his hands but put them near the center console of his car; Quadraro could not see what defendant was doing. About that time Lieutenant Whelan and Sergeant Coppotelli walked up to defendant's vehicle. Quadraro testified that he had a flashlight, which he shone into defendant's car, and that Coppotelli and Whelan were also using flashlights. Quadraro testified that because defendant did not raise or show his hands to the officers, he decided to remove him from the vehicle. Quadraro testified that he ordered defendant to exit the vehicle and then he opened the driver-side door. About the same time, Coppotelli opened the passenger-side door, and defendant was taken out of the car, put on the ground, and

handcuffed. Quadraro testified that defendant did not resist the officers' actions. Quadraro testified that he thought that defendant may have been reaching for a weapon when he was in his car.

Quadraro removed defendant's wig and recognized him from previous contacts. Quadraro helped defendant to his feet and asked why defendant had not raised his hands as requested. When defendant replied, Quadraro smelled alcohol on his breath. Quadraro then arrested defendant, whom he knew was only 17 years old, for unlawful consumption of liquor. Quadraro subsequently observed drug paraphernalia and cannabis in plain view near the center console in defendant's car.

Quadraro testified further that "[t]hrough both training and experience in executing search warrants in a situation like that if [defendant] would have complied, we would have paid close attention to him with three officers involved, ordered him from the vehicle, watched every move that he made, and we would have opened--I would have opened the door to see inside the vehicle, have him step out, and then detain him until everything was secure inside the residence."

Sergeant Matthew Coppotelli of the Dixon police department testified that on October 30, 2003, he was involved in the execution of a search warrant at 823 North Dement Avenue. While Coppotelli was in the house, he was advised by Quadraro that a vehicle had pulled into the driveway. Coppotelli left the house with Lieutenant Whelan and walked toward the vehicle in the driveway. Coppotelli saw Quadraro approach defendant's vehicle and heard him repeatedly yell for defendant to show his hands, using the phrase: "Police. Police department. Show me your hands. Let me see your hands." Coppotelli testified that he had no difficulty hearing Quadraro.

As Quadraro was yelling at defendant, Coppotelli and Whelan approached the passenger side of defendant's vehicle. Coppotelli observed defendant looking down toward the center console area of the vehicle and saw that defendant's hands were below the dashboard level. Coppotelli could see defendant's hands but could not discern what defendant was doing. Coppotelli opened the passenger-side door of the car and repeatedly yelled: "Police department. Show me your hands. Let me see your hands." Despite these commands, defendant kept his hands down toward his right leg area. At that point, Quadraro pulled defendant out of the vehicle. Coppotelli testified that he had an M16 rifle hanging in front of his shoulders on a harness. Coppotelli further testified that he approached defendant's car out of concern for officer safety and that there were 10 or 11 officers in the house assisting with the execution of the search warrant.

The parties stipulated to the admission of the search warrant that was being executed at the time of defendant's arrest. The search warrant commanded that the residence at 823 North Dement Avenue be searched for things that have been used in the commission of or constitute evidence of the unlawful possession of cannabis. The search warrant was based upon an affiant's observation of a plastic "baggie" containing a green leafy substance believed to be cannabis at the residence on several prior occasions.

Following the hearing, the trial court granted defendant's motion to suppress. In its written memorandum, the trial court found that there was no probable cause to detain defendant. The trial court stated, "[t]he real question presented is, can the police detain someone coming to the location where a search, pursuant to a lawful search warrant, is being executed[?]" The trial court reviewed a line of cases beginning with Ybarra v. Illinois, 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979), to answer the question. Citing United

States v. Cole, 628 F.2d 897 (5th Cir. 1980), and United States v. Clay, 640 F.2d 157 (8th Cir. 1981), the trial court stated that a defendant's mere presence at the scene of a search warrant does not obviate the Terry v. Ohio requirement for specific articulable facts to support an inference that a suspect might be armed and dangerous. Reviewing the facts of this case the trial court found that the officers knew the occupants of the residence, that it was not a high-crime area, that there was no basis to infer that the occupants were members of a gang or that they were armed or violent, and that the warrant was for possession of cannabis, not with the intent to deliver. The trial court noted that defendant had not exited his vehicle or attempted to enter the residence. The trial court opined that the police could have inquired into defendant's reason for being present once he exited his vehicle instead of seizing him while he was still in his vehicle. The trial court found that the seizure of defendant while still in his vehicle was a violation of his fourth amendment right to be free from unreasonable seizures.

Following the denial of its motion to reconsider, the State filed a certificate of impairment and a timely notice of appeal.

On appeal, the State contends that the trial court erred in granting defendant's motion to suppress evidence. Specifically, the State argues that, contrary to the trial court's finding, the police were justified in seizing defendant because defendant's actions gave them concern for their safety. Defendant responds that the police officers did not have either probable cause or a reasonable and articulable suspicion on which to base his seizure and therefore the trial court properly suppressed the evidence. See Brown v. Illinois, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975) (generally, evidence is not

admissible in a criminal prosecution against an accused if it is seized in violation of his fourth amendment rights).

When reviewing a ruling on a motion to suppress evidence seized, our standard of review is usually twofold. People v. Holland, 356 Ill. App. 3d 150, 153 (2005). We accord great deference to the trial court's factual findings and credibility determinations and reverse those conclusions only if they are against the manifest weight of the evidence. People v. Gherna, 203 Ill. 2d 165, 175 (2003); People v. Sorenson, 196 Ill. 2d 425, 430-31 (2001). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. People v. Rockey, 322 Ill. App. 3d 832, 836 (2001). After reviewing the trial court's factual findings, we review de novo the trial court's ultimate legal ruling on probable cause or reasonable suspicion. Sorenson, 196 Ill. 2d at 431.

The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Article I, section 6, of the Illinois Constitution provides the same level of protection against unreasonable searches and seizures as the fourth amendment to the United States Constitution unless there is evidence that the drafters intended it to be construed differently. People v. Moss, 217 Ill. 2d 511, 518 (2005). Defendant has not suggested the existence of additional protections provided by the Illinois Constitution; therefore, we look to the fourth amendment for our discussion. See Moss, 217 Ill. 2d at 518.

The fourth amendment was not intended to prevent consensual encounters between the police and citizens. Thus, a police officer may approach a person on the street and ask questions if that person is willing to listen. People v. Smith, 214 Ill. 2d 338, 351-52 (2005).

In nonconsensual encounters, the fourth amendment generally requires a warrant supported by probable cause. There are, however, "a few specifically established and well-delineated exceptions" to the warrant requirement. Moss, 217 Ill. 2d at 518, citing Katz v. United States, 389 U.S. 347, 357, 19 L. Ed.2d 576, 585, 88 S. Ct. *507, 514 1967.* In Terry v. Ohio, the United States Supreme Court determined that in certain narrowly drawn instances, a law enforcement officer may stop a person without probable cause if the officer has a reasonable and articulable suspicion that the person might be involved in criminal activity. Terry v. Ohio, 392 U.S. 1, 21-22, 30, 20 L. Ed. 2d 889, 905-06, 911, 88 S. Ct. 1868, 1879, 1884-85 (1968). When an officer reasonably believes that the individual whose suspicious behavior he is investigating is armed and presently dangerous to the officer or to others, the officer may take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm. Terry, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883. Another exception occurs when an officer is performing a "community caretaking function," which need not be supported by probable cause or reasonable suspicion. People v. Smith, 214 Ill. 2d 338, 351-52 (2005). This function describes encounters between police and citizens that typically involve the safety of the public. People v. Murray, 137 Ill. 2d 382, 387 (1990).

No one has suggested that the police encounter in this case was consensual. There was no warrant to search or seize defendant or his vehicle, and neither party argues that this seizure was taken by the officers acting in their community caretaking role. As stated above, a law enforcement officer may stop a person without probable cause if the officer has a reasonable and articulable suspicion that the person might be involved in criminal activity, and the officer may perform a pat-down search if he or she reasonable believes

that the person presents a danger.  See Terry, 392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884-85.

The State argues that the following combination of factors justified a reasonable and articulable suspicion warranting the removal of defendant from his vehicle:  (1) it was nighttime and the police were executing a search warrant for drugs; (2) defendant was wearing sunglasses and a wig; and (3) defendant did not display his hands as requested but kept them by the center console of his vehicle.  Defendant counters that he was seized at the time the police surrounded his car and ordered him to show his hands; therefore, his failure to display his hands cannot be used as a factor.

In order to determine whether there was a reasonable suspicion, we first must determine at what point defendant was seized. *A person is seized within the meaning of the fourth amendment when, by means of physical force or a show of authority, his freedom of movement is restrained.* Mendenhall v. United States, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 508-09, 100 S. Ct. 1870, 1876-77 (1980).  "Alternatively, 'the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.' " People v. Smith, 331 Ill. App. 3d 1049, 1053 (2002), citing Florida v. Bostick, 501 U.S. 429, 436, 115 L. Ed. 2d 389, 399-400, 111 S. Ct. 2382, 2387 (1991).  Examples of circumstances that might indicate a seizure include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.  Mendenhall, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.

In this case, the officers testified that they were on either side of the vehicle, it was dark, and they were shining flashlights into the vehicle.  Quadraro, who was on the driver

side, used "loud, repetitive commands" for defendant to show his hands. Coppotelli, who had walked up to the passenger side with a third officer, opened the passenger-side door of the car and also yelled for defendant to show his hands. Furthermore, Coppotelli was carrying an M16 rifle. The number of police officers surrounding the vehicle, the officers' tone of voice, and the presence of a weapon lead us to believe that a reasonable person would not have felt free to terminate the encounter.

Based upon this evidence, defendant was seized when his vehicle was surrounded and he was "commanded" to show his hands. To decide otherwise would mean that the encounter was initially consensual and defendant could have refused to show his hands and terminated the encounter. That was obviously not the case here, as defendant was pulled from the car when he failed to show his hands. See People v. Smith, 331 Ill. App. 3d 1049, 1055 (2002) (noting that a refusal to comply with an officer's request during a consensual encounter cannot establish the basis for a seizure). We also note that Quadraro testified that even if defendant had shown his hands he would been detained. We agree with defendant that his failure to display his hands cannot be a factor in determining whether the officers had a reasonable suspicion, because it took place after his seizure. We next determine whether the officers had a reasonable and articulable suspicion that defendant was involved in criminal activity or armed and dangerous based on the remaining factors.

The State argues that the security of the police officers executing a search warrant for drugs at night is a factor to be considered in that determination. In United States v. Clay, 640 F.2d 157 (5th Cir. 1980), the court held that it was beyond dispute that police officers may take action to ensure their own protection when they are executing a search

warrant. Clay, 640 F.2d at 160. However, the scope of the police action must be weighed against the fourth amendment rights of others. Clay, 640 F.2d at 160. In Clay, the defendant knocked on the door of a residence shortly after police officers had begun executing a search warrant. An undercover police agent ordered the defendant into the house. When the defendant hesitated and took a step or two backwards, the officer pulled out his gun and again ordered the defendant into the house. A pat-down search revealed that the defendant possessed a small quantity of marijuana and a gun. The Clay court found that evidence of criminal activity occurring within the house did not justify the frisk of the defendant, who was approaching the premises. Clay, 640 F.2d at 160. The court explained that " 'a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.' " Clay, 640 F.2d at 160, quoting Ybarra v. Illinois, 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979). The Clay court concluded that the police need a reasonable and articulable suspicion pursuant to Terry v. Ohio to stop or frisk a visitor to a residence being searched. Clay, 640 F.2d at 159. In making an assessment whether the seizure was justified, the Clay court found that the facts are judged  using an objective standard  would the facts available to the officer at the moment of seizure warrant a person of reasonable caution in the belief that the action taken was appropriate to protect his life or the life of innocent bystanders?" Clay, 640 F.2d at 159. Ultimately the Clay court found that the defendant's conduct alone was not suspicious under the circumstances. Clay, 640 F.2d at 159.

Looking objectively at the facts in this case, we find that defendant's act of pulling his vehicle into the driveway of the residence at approximately 8:15 p.m. was not inherently suspicious. The search warrant provided that the officers were to search for evidence relating to the possession of cannabis, and no one testified to a suspicion that drugs were

being sold from the residence; therefore, the danger known to accompany drug trafficking was not a factor here. The trial court found that the neighborhood was not dangerous. Furthermore, the trial court found that the police were familiar with the occupants of the residence and had no reason to believe they were armed or violent. None of these findings were disputed by the State. We do not believe that *the remaining allegation provided by the State, the fact that defendant was wearing a purple wig and sunglasses, was a basis to suspect that criminal activity was afoot, particularly because it was the night before Halloween. While police officers should take precautions to ensure that neither they nor their fellow officers are exposed to needless danger, the facts in this case are not enough to warrant a person of reasonable caution to believe that defendant s seizure, while he was sitting in his car, was required for the protection of the officers.* See Clay, 640 F.2d at 159. The State argues that the case at hand is readily distinguishable from Clay and requests this court to review United States v. Maddox, 388 F.3d 1356, 1362 (10th Cir. 2004). The State's reliance on Maddox is misplaced. In Maddox, federal marshals and a local deputy arrived at a mobile home around dusk to make an arrest for narcotics trafficking. The mobile home, which had a long, dimly lit driveway, was located in a high-crime area. The deputy was aware that the home had previously been the location of numerous violent crimes and that several narcotics traffickers and violent fugitives had been arrested there. While the federal marshals were executing the arrest warrant, the deputy remained outside. Several vehicles drove up the driveway, including a pickup truck in which the defendant was sitting. The deputy observed the defendant reach under the seat as the truck pulled into the carport. The defendant exited the truck and the deputy asked everyone who arrived, including the defendant, to stay in the carport area. Despite the deputy's instructions, the defendant began to act erratically and paced in circles farther and farther from the carport

area. After a total of eight people were in the carport area, the deputy called for assistance. In response to an inquiry from a responding officer, the defendant admitted that he had a gun and methamphetamine. The defendant was arrested and he subsequently moved to have the evidence suppressed, arguing that it was acquired as a result of his unlawful detention. Maddox, 388 F.3d at 1358-60. The defendant appealed the trial court's denial of his motion to suppress and the Tenth Circuit Court of Appeals affirmed. Maddox, 388 F.3d at 1369.

The reviewing court held that police may detain individuals on the scene of an arrest who are not within the immediately adjoining area of the arrest if the officers " 'possess a reasonable belief based on specific and articulable facts[,]' that the individual poses a danger to them." Maddox, 388 F.3d at 1363, quoting Maryland v. Buie, 494 U.S. 325, 337, 108 L. Ed. 2d 276, 288, 110 S. Ct.1093, 1099-1100 (1990). The court explained that it included the carport as part of the arrest scene in that case because of the isolated and dangerous nature of the residence. Maddox, 388 F.3d at 1363. After examining the totality of the circumstances, the reviewing court found that the officer did have a reasonable belief that the defendant posed a threat. Maddox, 388 F.3d at 1365. First, the arrest of a narcotics trafficker is routinely dangerous. Maddox, 388 F.3d at 1366. Second, the arrest was taking place in a dangerous location and it was getting dark. Maddox, 388 F.3d at 1366. Third, the deputy was outnumbered; and last, the deputy observed the defendant reach under the seat of the truck as he pulled up the driveway. Maddox, 388 F.3d at 1366. The court pointed out that, while many of these factors standing alone would not amount to a reasonable suspicion, all together they were sufficient for the seizure. Maddox, 388 F.3d at 1366.

The case at hand is not similar to Maddox. Unlike Maddox, in this case, the trial court found that the residence was not in a dangerous area. There were no allegations of past violent or criminal behavior (other than possession of cannabis) at the location. No facts were presented that would warrant considering the driveway, in this case, a part of the arrest scene as the carport was in Maddox. Furthermore, even if the driveway was a part of the arrest scene, in light of all the factors together, the State did not establish that the police had a reasonable belief that defendant posed a threat. The police knew the occupants of the home and they had no evidence to believe that they were armed or violent. The amount of cannabis listed in the complaint for the search warrant was consistent with personal consumption; therefore, the dangers known to accompany drug trafficking and the arrest of a drug trafficker were not present here. Furthermore there was no furtive action seen by the officers as defendant pulled up to the house. The allegation that defendant refused to display his hands and kept them by the center console took place after the seizure. The facts upon which the seizure was based are that defendant pulled up into the driveway of his brother's house, at night, wearing a wig and sunglasses while police officers were executing a search warrant in the house. These facts do not support a reasonable suspicion of potential danger to the officers. See Maddox, 388 F.3d at 1367.

We also note that the Maddox court provided that not only must the seizure be justified at its inception but also the scope of the seizure must be reasonable under the circumstances. Maddox, 388 F.3d at 1367. The court pointed out that the deputy did not handcuff Maddox, draw his weapon, or treat Maddox with indignity. Maddox, 388 F.3d at 1367. The deputy was found to have employed no more force than was necessary for officer protection when he temporarily detained Maddox. Maddox, 388 F.3d at 1367. In the

case at hand, defendant was pulled out of the car, placed on the ground, and handcuffed before being questioned by the police. Even if the seizure here had been warranted, under the reasoning of <u>Maddox</u>, the scope was beyond what was necessary under the circumstances. <u>Maddox</u>, 388 F.3d at 1367.

After reviewing all of the circumstances, we find that the police officers did not have a reasonable belief based on specific and articulable facts that defendant posed a danger to the officers or was involved in criminal activity. Accordingly, we hold that the trial court properly determined that defendant's seizure was not justified and properly granted defendant's motion to suppress the evidence. For the foregoing reasons, we affirm the judgment of the circuit court of Lee County.

Affirmed.

BYRNE, J., concurs.

JUSTICE GILLERAN JOHNSON, dissenting:

The crucial facts in this case are not in dispute. While the police were executing a search warrant at a residence in Dixon, the defendant drove his car into the driveway of that residence. Before the defendant exited his vehicle, a police officer approached his car. The police officer ordered the defendant to show him his hands. The defendant did not; instead, he looked through the center console of his car. When the defendant failed to comply with his orders, the police officer forcefully removed him from the car. The issue thus becomes whether the defendant's constitutional rights were violated when he was forcefully removed from his car.

The fourth amendment does not prohibit all searches and seizures, but only those that are unreasonable. <u>United States v. Sharpe</u>, 470 U.S. 675, 682, 84 L. Ed. 2d 605, 613,

105 S. Ct. 1568, 1573 (1985). In <u>Terry v. Ohio</u>, 392 U.S. 1, 21-22, 30, 20 L. Ed. 2d 889, 905-06, 911, 88 S. Ct. 1868, 1879, 1884-86 (1968), the United States Supreme Court determined that in certain narrowly drawn instances, a law enforcement officer may stop a person without probable cause for arrest if the officer has a reasonable and articulable suspicion that the person might be involved in criminal activity. If the officer has such a reasonable and articulable suspicion, he may also conduct a protective frisk of the suspect's outer clothing if he reasonably believes that the suspect might be armed and dangerous. <u>Terry</u>, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.

In <u>Maryland v. Buie</u>, 494 U.S. 325, 108 L. Ed. 2d 276, 110 S. Ct. 1093 (1990), the Supreme Court applied the <u>Terry</u> stop rule to "protective sweeps." A protective sweep allows officers to conduct a search of a home without probable cause solely for the purpose of officer protection "as an adjunct to the serious step of taking a person into custody for the purpose of prosecuting him for a crime." <u>Buie</u>, 494 U.S. at 333, 108 L. Ed. 2d at 285, 110 S. Ct. at 1098. Because the "risk of danger in the context of an arrest in the home is as great as, if not greater than, it is in an on-the-street or roadside investigatory encounter," officers may take "steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." <u>Buie</u>, 494 U.S. at 333, 108 L. Ed. 2d at 285, 110 S. Ct. at 1098. The Supreme Court stressed that this intrusion be "no more than necessary to protect the officer from harm," and "that the arresting officers are permitted in such circumstances to take [only] reasonable steps to ensure their safety after, and while making, the arrest." <u>Buie</u>, 494 U.S. at 333-34, 108 L. Ed. 2d at 286, 110 S. Ct. at 1098. The Supreme Court held that a protective sweep should "last[] no longer than is necessary

to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." Buie, 494 U.S. at 335-36, 108 L. Ed. 2d at 287, 110 S. Ct. at 1099. The Supreme Court further explained that when there are "articulable facts which, taken together with rational inferences from those facts," would lead a reasonably prudent officer to believe that the broader area poses a danger to those on the arrest scene, he may conduct a protective sweep of the area surrounding the location of the arrest. Buie, 494 U.S. at 334, 108 L. Ed. 2d at 286, 110 S. Ct at 1098.

In United States v. Maddox, 388 F.3d 1356, 1362 (10th Cir. 2004), the Tenth Circuit Court of Appeals extended the rationale of Buie to detentions taking place outside of a house in which an arrest is occurring. Based on the facts set forth by the majority in discussing Maddox, the Tenth Circuit determined that the defendant's constitutional rights had not been violated. Maddox, 388 F.3d at 1368. After setting forth the law in Buie, the reviewing court addressed whether the area in which the defendant had been detained was part of the "arrest scene." Maddox, 388 F.3d at 1361-63. The reviewing court explained that, in making this determination, it would consider the same concerns that justify protective sweeps as outlined in Buie. Maddox, 388 F.3d at 1362. Namely, whether such sweeps protect officers from potentially dangerous individuals who may be present nearby. Maddox, 388 F.3d at 1362-63. The reviewing court therefore concluded that when drawing the boundaries of the arrest scene in an individual case, it was proper to consider the reasonable threats posed to the officers. Maddox, 388 F.3d at 1363. As such, the court held "that law enforcement officers may only detain individuals on the scene of the arrest who are not within the 'immediately adjoining' area of the arrest if the officers 'possess a reasonable belief based on specific and articulable facts[,]' that the individual poses a

danger to them." Maddox, 388 F.3d at 1363, quoting Buie, 494 U.S. at 337, 108 L. Ed. 2d at 288, 110 S. Ct. at 1099-1100.

I agree with the analysis set forth in Maddox that, in the interests of officer safety, police may detain people outside an area where a search warrant is being executed. Such protective detentions may be proper if (1) the police had a reasonable and articulable suspicion of potential danger to the executing officers; (2) the protective detention is no more than necessary to protect the officers from harm; (3) the police officers take only reasonable steps to ensure their safety during the execution and (4) the protective detention lasts no longer than is necessary to dispel the reasonable suspicion of danger or to execute the warrant and depart the premises. See Buie, 494 U.S. at 333-336, 108 L. Ed. 2d at 285-88, 110 S. Ct at 1097-99; Maddox, 388 F.3d at 1367-68.

Turning to the facts of the instant case, it is apparent that the defendant's actions gave the police a reasonable and articulable suspicion that their safety was in jeopardy. The defendant drove into a driveway of a house at night where a search warrant was being executed. It was difficult to see the defendant and determine his intentions because he was wearing a wig and glasses that disguised his appearance. Several police officers then approached the defendant's vehicle to determine what he was doing there. The defendant did not make any attempt to drive away. Although the police loudly instructed the defendant to show them his hands to verify that he was not holding a weapon, the defendant did not. Rather, the defendant searched through the center console of his car. As the defendant failed to respond to several police commands and instead continued to search through his car, the police officers had but a few seconds to determine whether the defendant was reaching for a weapon. Indeed, based on the situation with which they were

confronted, it would have been extremely difficult for the police to conclude that the defendant was reaching only for something innocuous. Based on all of the above-delineated circumstances, the police officers were justified in removing the defendant from his vehicle in order to ensure officer safety.

The record further reveals that after the police removed the defendant from his vehicle, they took reasonable steps to protect both the defendant's safety and their own. See Maddox, 388 F.3d at 1367-68. The officers placed the defendant on the ground and handcuffed him. Furthermore, shortly after the defendant was removed from his vehicle, he spoke, and the arresting officer could smell alcohol on the defendant's breath. Because the arresting officer knew that the defendant was younger than 21, he then had probable cause to arrest the defendant and search the defendant's vehicle. See People v. Bailey, 159 Ill. 2d 498, 506-07 (1994) (alcohol-related offense created a valid basis for search of defendant's vehicle incident to an arrest). The evidence subsequently recovered from the defendant's vehicle was proper and should not have been suppressed. Bailey, 159 Ill. 2d at 506-07.

In so finding, I note that the defendant's conduct in Maddox that justified the search was more egregious than that in the instant case. Conversely, the actions of the defendants in Cole and Clay, two cases upon which the trial court relied in granting the defendant's motion to suppress, did not rise to the level of the defendant's conduct in this case. In neither of those cases did the defendant do anything that could have been construed as threatening to the police. See Clay, 640 F.2d at 159 (defendant knocked on door where police were executing search warrant and did nothing suspicious other than hesitate in complying with police officer's commands); Cole, 628 F.2d at 898 (defendant did

nothing suspicious other than drive his truck to area where police were about to execute search warrant). However, rather than comparing the facts of the instant case to the cases relied on by the trial court, this court must analyze the propriety of the trial court's ruling based on the totality of the circumstances of the case herein. See People v. Moss, 217 Ill. 2d 511, 518 (2005) (reasonableness of a search is measured in objective terms by examining the totality of the circumstances). Based on the totality of the circumstances herein, the defendant's constitutional rights were not violated when the police removed him from his vehicle.

Furthermore, I believe to be without merit the defendant's argument that reversing the trial court's ruling herein would "establish a new exception to the warrant requirement which would allow police to search and seize anyone and anything anywhere in the area during the time the police are executing a search warrant." Police are not given free rein to search anyone who comes near while they execute a search warrant. If a person enters an area where a search warrant is being executed, either that person can leave (see People v. Smith, 331 Ill. App. 3d 1049, 1054 (2002)), or he can comply with the police officers' requests to verify that he is not a threat to them. However, if he does neither, and if the police have a reasonable and articulable suspicion of potential danger to themselves, the police may take reasonable measures to ensure that he is not a threat to them. See Maddox, 388 F.3d at 1367-68. Because the defendant herein did not make any effort to leave or to cooperate with the requests of the police, and because the defendant's actions gave the police a reasonable and articulable concern about their safety, the police were justified in detaining him to verify he was not a threat to their safety.

As this case involved a temporary seizure supported by a reasonable and articulable suspicion of potential danger to the officers, the trial court erred in granting the defendant's motion to suppress. Accordingly, the judgment of the circuit court of Lee County should be reversed and the cause remanded for additional proceedings.